THE PEOPLE, *ex rel.* The First National Bank of West Winfield, *vs.* THE BOARD OF SUPERVISORS OF THE COUNTY OF HERKIMER.

The act of the legislature, of May 17, 1867, providing for relief against illegal taxation, in the counties of Herkimer, Otsego, Chenango, Madison, Onondaga, Saratoga and Fulton, which declares that the boards of supervisors of those counties " are hereby *authorized* and *empowered*, upon the application of any party aggrieved, to hear and determine any claim of an assessment for taxes, made in their respective counties upon United States bonds, stocks or securities, any or all of them, which by law are or have been exempt from taxation, and to repay to the proper person, the amount collected or paid upon such assessment," is *mandatory* upon each board of supervisors, upon presentation of such a claim, to hear and determine whether an assessment and payment has been made upon United States bonds, stocks, or securities, exempt from taxation; and if they find that there has been, then it is *mandatory* upon the board to pay the amount so erroneously assessed, to the proper party entitled thereto.

The only subject upon which the judgment of the board of supervisors is to be exercised, in such a case, is whether it is established before them that bonds, stocks or national securities not subject to taxation have been taxed; and if so, the amount so erroneously taxed, and paid, and *who* is entitled to the repayment thereof.

If a board chooses to reject a claim, when fully proved, it is the same as a refusal to act at all, and a mandamus will be allowed, to compel them to do what the statute commands them to do.

When there is a moral obligation on the part of a county to refund money unjustly received upon an erroneous assessment for taxes, the legislature has the right to pass a law to compel the board of supervisors to perform that duty.

THIS is an application, upon due notice, for a mandamus to compel the board of supervisors to hear, determine and pay to the relator a claim of 3060.61, for an assessment to that amount against, and which was paid by, the Bank of West Winfield.

The motion papers show that in the year 1864, the Bank of West Winfield, a State bank, with a capital of $100,000, located in the town of Winfield, in the county of Herkimer, held as part of its capital stock $40,000 in the stocks and bonds of the United States, which it continued to hold during that year. That the assessors of the town of Win-

field, in the year 1864, assessed the bank for the whole of its capital, including that portion thereof held in the said bonds and stocks, and that the tax was levied by the board of supervisors of said county, and was subsequently paid by the bank, and that the amount assessed, levied and paid upon the said $40,000 of bonds and stocks was the aforesaid sum of $3060.61. It also appeared that the bank did not appear before the assessors, for the purpose of reducing the assessment, nor did it present any affidavit to obtain such reduction, but that the assessors of said town were informed of the fact that the bank held the said securities and stocks aforesaid.

That in the year 1865 the West Winfield Bank was duly transformed into a national bank, pursuant to the acts of congress, and was reorganized under the name of The First National Bank of West Winfield, and became entitled to all the claims and demands belonging to the Bank of West Winfield, and especially to the claim for the said erroneous assessment and payment of the $3060.61.

That at the annual session of the said board of supervisors, held in and for said county of Herkimer in November, 1867, the First National Bank presented the claim to said board for the $3060.61, pursuant to the provisions of the act entitled "An act providing for relief against illegal taxation, in the counties of Herkimer, Otsego, Chenango, Madison, Onondaga, Saratoga and Fulton," passed May 17, 1867, (*Laws of* 1867, *ch.* 938,) together with the proofs showing that the assessment was erroneous, and that the relator was entitled to the repayment of that sum pursuant to the said act. But the said board refused to audit and allow the said claim, and rejected the same.

Whereupon the relator makes this application for a mandamus.

*G. A. Harding,* for the motion.

*Prescott & Morgan,* opposed.

FOSTER, J.  But for the act of 1867, above mentioned, the relator would be without remedy against the county of Herkimer, inasmuch as no application had been made (pursuant to the statute in regard to assessments) to the assessors, for a review by them of the assessment, and because also it appears that the payment of the tax was made without coercion.

It was however a case where there was a moral obligation on the part of the county of Herkimer and of the town of Winfield, to refund the sums so unjustly received by them from the Bank of West Winfield.  And I have no doubt that the legislature had the right to pass a law to compel the board of supervisors to perform that duty.

The first section of the act declares that " the boards of supervisors of the several counties hereafter mentioned " (being the same mentioned in the title of the act) " are hereby authorized and empowered, upon the application of any party aggrieved, to hear and determine any claim of an assessment for taxes made in their respective counties upon United States bonds, stocks or securities, any or all of them, which by law are or have been exempt from taxation, and to repay to the proper person the amount collected or paid upon such assessment."  It is claimed on the part of the board of supervisors that this act vests them with the power to hear and determine *at their discretion*, and is in no sense mandatory upon them.  This I think is a mistake.  Upon the clearest principles it is mandatory upon the board to hear and determine whether an assessment and payment had been made upon United States bonds, stocks or securities, exempt from taxation, and if they find that there had been, then it was mandatory upon the board to repay the amount so erroneously assessed, to the proper party entitled thereto.

I need not cite the numerous instances in which the word "may," when used in reference to the performance of public duties, has been held *to* mean "must" or " shall;"

The People *v.* Board of Supervisors of Herkimer County.

or that on *authority* a *power* to do an act, when applied to the performance of such duties, is mandatory, for they are too familiar to require it.

The only subject upon which the judgment of the board of supervisors was to be exercised, was whether it was established before them that bonds, stocks or the national securities, not subject to taxation, had been taxed; and if so, the amount so erroneously taxed, and paid, and *who* was entitled to the repayment thereof.

In regard to all these questions there is no dispute, but the board reposes itself upon the ground that in its discretion it had rejected the claim, not upon the ground that such erroneous assessment had not been paid, or that the claim did not belong to the relator; but for the reason that they were at liberty to allow it or not, in their discretion, irrespective of the question whether the claim was established before them or not.

This, I think, will not answer the demands of the statute in question. When, under such an act as this, the board choose to reject a claim, when fully proved, it is the same as a refusal to act at all, and a mandamus will be allowed, to compel them to do what the statute commands them to do.

I think a peremptory mandamus should issue, directing them to hear and determine and pay the claim in question.

[OSWEGO SPECIAL TERM, December 17, 1867.   *Foster*, Justice.]