HIRAM GILMORE, RESPONDENT, *v.* THE CITY OF UTICA, THE COMMON COUNCIL OF THE CITY OF UTICA, WILLIAM F. HOERLEIN, AS TREASURER OF THE CITY OF UTICA, AND THE WARREN-SCHARF ASPHALT PAVING COMPANY, APPELLANTS.

*Repaving of Genesee street in Utica — obligation of the horse railroad to pay therefor — 1870, chap. 28.*

The common council of the city of Utica, on October 24, 1862, gave permission to the Utica City Railroad Company to construct a horse railroad, with a double or single track, along or near the center of Genesee street, in that city, upon condition that the railroad would replace and keep in good repair the pavement between and at least two feet in width on each outer side of the tracks. In

December, 1886, the Utica City Railroad was leased to the Utica Belt Line Street Railroad Company, and the lessee undertook to pay, bear and discharge all taxes and assessments, ordinary and extraordinary, of every description, lawfully assessed, imposed, levied and accruing upon the said street surface railroads, etc. ; to do any and all paving required by law, on the streets upon which the said street surface railroads thereby leased were or might be operated, as might be legally imposed during such lease.

By chapter 28 of the Laws of 1870 it was provided that " the common council is hereby authorized to require all railroad companies operating street railroads in any of the streets of the city to repave between their tracks, and at least two feet in width on each side thereof, whenever the common council shall deem such repavement necessary."

Subsequently, and in March, 1888, the common council determined to repave Genesee street and entered into a contract for the work, and thereafter the expense thereof was by the city authorities assessed one-third thereof upon the city at large and two-thirds thereof upon the adjacent property.

In an action, brought by a taxpayer and an owner, so assessed upon property upon Genesee street, to have said assessment declared void:

*Held,* that when the common council determined that the repavement was necessary it became the imperative duty of the street railway to repave between its tracks, and at least two feet in width on each side thereof.

That the provision of the statute was mandatory, and that it was the duty of the common council to enforce compliance therewith on the part of the street railway.

That a taxpayer at large had a right to have that provision of the law enforced, and as an adjacent owner he was also entitled to have the common council exact a performance thereof from the street railway.

That the provision in chapter 426 of 1887, that " the common council shall then determine the expense of the whole work," applied only to the work on that part of the street not occupied by the railroad company.

APPEAL by the defendants, upon questions of fact and law, from a judgment, entered in the office of the clerk of Oneida county on the 23d day of October, 1889, after a trial at a Special Term held in the county of Oneida on the 26th day of February, 1889.

The action was brought to have an assessment imposed by the city authorities of the city of Utica declared to be illegal, fraudulent and void; and that no part of the expense of a repavement, to provide for the payment of which said assessment was laid, was a legal charge, whether by assessment or otherwise, upon the property of the plaintiff, or upon any other of the real estate fronting upon that portion of Genesee street, in the city of Utica, from the north line of Eagle street to the southerly line of the city, and that no part of the said expense was chargeable to the city.

Plaintiff is a resident of the city of Utica and a taxpayer therein,

and owner in fee of a house and lot on the easterly side of that portion of Genesee street between the northerly line of Eagle street and the southerly line of said city, fronting on Genesee street, and has paid for many years the general tax assessed and the local assessments made against his property by the officers and agents of the city. Under the general railroad act of 1850, a street railway was organized in 1862, and laid its track in said street, and the same is now being operated therein.

October 24, 1862, the common council of the city of Utica adopted a resolution giving permission " to the Utica City Railroad Company to construct, maintain and operate a horse railroad, with a double or single track, along or near the center of Genesee street, from the New York Central depot (or Bagg's Square) to the southerly line of the city (or to Oneida Square), and thence to the southerly line of the city by the most practicable street or avenue. * * * Upon condition, nevertheless, that the said railroad company shall and doth construct the said railroad upon the most approved plan, and in a secure and substantial manner, and replace and keep in good repair the pavement between and at least two feet in width on each outside of the tracks, the whole to be done subject and according to the directions of the city surveyor and street commissioner. * * * Said railroad to be also subject to all the regulations and restrictions contained in the act of the legislature passed April 2, 1850, and the several acts passed amendatory thereof or supplementary thereto."

In December, 1886, the said railroad company was leased to the Utica Belt Line Street Railroad Company, a corporation organized under the surface railroad act of 1884, for the period of ninety-nine years, and the lessee undertook to pay, bear and discharge all taxes and assessments, ordinary and extraordinary, of every description lawfully assessed, imposed, levied and accruing upon the said street surface railroads, etc. ; to do any and all paving required by law on the streets upon which said street surface railroads thereby leased are or may be operated, as may be legally imposed during said lease.

In March, 1888, the common council " determined to repave said Genesee street from the northerly line of Eagle street southerly to the city line," and May 28, 1888, the common council accepted the

proposal of the defendant, the Warren-Scharf Asphalt Paving Company, and entered into a contract, in which the company agreed to repave said street with Trinadad asphalt, according to certain plans and specifications made by the city surveyor. At a meeting of the common council in 1888, the work was reported by said city surveyor completed, and the bill, amounting to $101,358.87, therefor was audited. Thereupon the city authorities proceeded to ascertain one-third thereof, which was to be a charge upon the city at large, and to ascertain the amount of two-thirds thereof, and made an assessment upon the adjacent property and ascertained the amount to be levied against the plaintiff's property to be the sum of $1,410,40, which sum they included in the list or roll against the property of the plaintiff. The street railroad company constructed double tracks in the street before the same was repaved. Before the proposal of the Warren-Scharf Asphalt Paving Company was accepted by the common council notice was given on behalf of those owning property on both sides of that portion of Genesee street, southerly from the northerly line of Eagle street to the southerly line of the city, to the common council of the city of Utica, that any attempt to impose upon the real property fronting on said street the expense of said repavement between and at least two feet in width on each outerside of said tracks, would be resisted and opposed as wrong and unlawful.

The court held, as conclusions of law: "That this action is maintainable. 2. That said assessment is illegal and void and a cloud upon the title of the said real estate of said plaintiff. * * * 4. That neither the expense of that portion of said repavement between the tracks of said railroad in said Genesee street, the rails of said tracks and a space of two feet in width outside and adjoining the outside rails of said tracks, nor any part of said expense, was or is chargeable to said the city of Utica or assessable against the plantiff or the said property of the plaintiff, or against any of the property fronting on said Genesee street or the owners or occupants thereof. 5. That the plaintiff is entitled to judgment perpetually enjoining and restraining said the city of Utica, its common council, its officers, attorneys, agents, collectors and servants, and each and every of them, from proceeding in any manner to or attempting in any manner to collect or enforce said assessment."

*Everett & Lewis* and *A. M. Beardsley*, for the appellants.

*W. A. Matteson* and *P. C. J. De Angelis*, for the respondent.

HARDIN, P. J. :

On the 16th of March, 1888, when the common council determined by a resolution to repave Genesee street, there rested upon the street railway the burden of repaving that portion thereof occupied by the railroad, and two feet outside of its tracks. The burden was imposed by the resolution passed by the common council in 1862, to which the street railway had subjected itself in accepting the permission upon the condition mentioned in the resolution, and by assumption of such burden by the terms of the lease under which the present railroad became possessed of the right to operate the same in Genesee street. Besides, in chapter 28 of the Laws of 1870, section 79 of the charter was amended so as to confer power upon the common council to enforce the burden resting on the railroad. In the fifth subdivision of section 79, it is provided, viz. : "The common council is hereby authorized to require all railroad companies operating street railroads in any of the streets of the city to repave between their tracks, and at least two feet in width on each side thereof, whenever the common council shall deem such repavement necessary." This language clearly authorized the common council to determine the necessity for repavement. Such determination was made by the common council; it then became the imperative duty of the street railway "to repave between their tracks, and at least two feet in width on each side thereof." We think the provisions of the statute just quoted are mandatory, and that it was the duty of the common council to enforce compliance on the part of the street railway. We think the taxpayers at large had a right to have that provision of the law enforced, and that the adjacent owners were entitled to have the common council exact a performance on the part of the street railway. (*People ex rel. First Nat. Bank* v. *The Bd. of Suprs. of Herkimer Co.*, 56 Barb., 452 ; *People ex rel. Otsego Co. Bank*, v. *The Bd. of Suprs. of Otsego Co.*, 51 N. Y., 401.) In delivering the opinion in the case last cited, the court referred to *Mayor* v. *Furze* (3 Hill, 612), and approves of the language of Judge NELSON, which is as follows: "Where a public body or officer has been

clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely, and not peremptory." A similar doctrine was laid down in *Supervisors* v. *United States* (4 Wall., 435), in which case Mr. Justice SWAYNE observed : " The conclusion to be deduced from the authorities is, that where power is given to public officers in the language of the act before us, or in equivalent language, whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is, in fact, peremptory. What they are empowered to do for a third person the law requires shall be done. The power is given, not for their benefit, but for his. It is placed with the depositary to meet the demands of right, and to prevent a failure of justice. It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless." (See, also, *The City of Galena* v. *Amy,* 5 Wall., 705.)

If the common council had exacted from the railroad a performance of its duty, the burden cast upon the taxpayers and the plaintiff and other adjacent owners would have been much less. The effect of the resolution of 1862, and the provision in the act of 1870 (subd. 5, § 79), relieved the plaintiff and other adjacent owners as well as the taxpayers from the burden of maintaining the pavement on that portion of the street occupied by the street railway. In effect, the expense of repaving such portion of the street was not only imposed upon the street railway, but the liability therefor was withdrawn from the adjacent owners and from the taxpayers at large.

We agree with the learned counsel for the appellant that " the railroad's liability, if any, is a matter between it and the city;" but we do not agree with him in the assumption that the adjacent owners are not interested in the enforcement of that liability. We think they are relieved *pro tanto* from a burden which otherwise would rest upon them.

By chapter 426 of the Laws of 1887, section 99 of the charter was amended, and a mode was prescribed for enforcing the collection of expenditures in grading, leveling or paving or repaving the streets; however, we find nothing in that statute which relieves the railroad from the burden resting upon it to maintain the pavement between

its tracks and the two feet adjacent thereto. We think the words, "the common council shall then determine the expense of the whole work," may receive a reasonable construction by applying them to the expenditures upon that portion of the street not occupied by the street railway. We think the words were not intended to authorize a transfer of the burden resting upon the railway to the adjacent owners or to the taxpayers at large.

There is nothing in the case to indicate that the street railway company was unable to perform the obligations imposed on it. The common council, therefore, ought to have exacted a performance on the part of the railway company. In the *Matter of Appleby* (26 Hun, 428), the court says : " The omission to enforce it (ordinance), and to secure so much of the pavement under it as the railroad company was obliged to lay, was a material error and defect in the proceedings themselves, of which the applicant, as the owner of the property fronting upon the avenue, has a legal right to complain. (*Matter of Casey*, 5 Hun, 463 ; *Matter of N. Y. Prot., etc., School*, 75 N. Y., 324.) No part of the cost of this twenty-five feet of pavement was legally chargeable to him, but, under the terms of the ordinance, it is clear that it should have been imposed upon the railroad company. A portion of it was included in the assessment required to be paid by him, and to that extent he has been made the subject of injustice."

*O'Reilly* v. *The City of Kingston* (114 N. Y., 440), is distinguishable from the case before us, as the case arose under a different statute and a different resolution of the common council from the one we have been considering. In that case the assessment was to be made upon land bordering upon the street, and it was held that the land occupied by the railroad " did not border on or touch the street within the meaning of the charter ; it being simply a part thereof."

Whether the contractor, the Warren-Scharf Asphalt Paving Company, can enforce its contract against the city is a question which we need not now determine. As was said by ALLEN, J., in *Moore* v. *Mayor* (73 N. Y., 251) : " While a local assessment may be void ; a contract fully performed, made in pursuance of the same ordinance, may be valid." If the contractor has fully performed, and is entitled to enforce payment of his contract-price from the city, that fact does not of itself stand in the way of the plaintiff's

enforcing his legal rights, nor make against the propriety of his resisting an overburdensome assessment.

Upon the questions we have alluded to, further views are expressed in the opinion delivered at Special Term, as well as upon other questions arising in the case, which are considered therein quite satisfactorily. We, therefore, do not deem it needful to further discuss the questions arising in this case.

We think the plaintiff was entitled to the relief awarded at the Special Term, and the judgment should be affirmed, with costs.

MARTIN, J., and MERWIN, J., concurred.

Judgment affirmed, with costs.