GILMORE v. CITY OF UTICA et al.

(Supreme Court, General Term, Fourth Department. July, 1891.)

1. MUNICIPAL CORPORATIONS—STREET ASSESSMENTS—VALIDITY.
   An assessment for repairing a street of the city of Utica, made under Laws N.Y. 1887, c. 426, which provides that one-third of the expense shall be borne by the city at large, and two thirds by the abutting owners, is not invalidated by the fact that a street-railroad company occupying the street was not required to defray the expense of repaving the space devoted to its use, which it might have been required to do under the city charter. Laws N. Y. 1870, § 79. Gilmore v. City of Utica, 24 N. E. Rep. 1009, followed.

2. SAME—ACTION TO VACATE—IMMATERIAL ERRORS.
   A municipal assessment will not be vacated on account of the existence of errors or mistakes in making up the estimate of costs of improvements on which the assessment was based, where no fraud, collusion, corruption, or bad faith appears on the part of the municipality.

3. SAME—NOTICE—SUFFICIENCY OF PUBLICATION.
   Where the charter of a city required a notice of the filing of plans and specifications of a proposed street improvement with the city clerk to be published in the official newspapers for three alternate days, such publication will not be deemed insufficient because one of the days of publication immediately followed another, without the intervention of the alternate day.

4. SAME—CHANGE OF PLANS—RATIFICATION.
   An assessment for a street improvement will not be vacated on the ground that the plans and specifications therefor permitted the city surveyor to make such changes therein as he should deem necessary to carry out their true meaning and interest, where the counsel accepted the work, and thereby approved and ratified such changes made by the surveyor.

Appeal from special term, Oneida county.

Action by Hiram Gilmore against the city of Utica and others to vacate a street assessment. Plaintiff was a tax-payer in the city of Utica, and the owner of property fronting on Genesee street, which street was repaved by the defendant the Warren-Scharf Asphalt Paving Company, in pursuance of a contract awarded to it by the common council. After the contract was completed, the company and the city surveyor reported the completion of the

same to the common council, and the reports were accepted, and the common council directed an assessment to be made by the proper officials, and the plaintiff's property was assessed $1,410.40, the assessment roll mentioning that he had 179 feet fronting on the street liable to be assessed for such repavement, and the expenses thereof. The city and its officers were prosecuting proceedings for the purpose of enforcement of such assessment, and the plaintiff brought this action seeking to have the assessment declared void, and an injunction prohibiting the collection of the assessment. The special term found "that subsequently, and at a meeting of said common council held October 12, 1888, said work was reported by the said city surveyor completed by the said Warren-Scharf Asphalt Paving Company, and was accepted as performed, and the bill of the said paving company presented, amounting to $101,358.87; that subsequently, and at a meeting of said common council held November 16, 1888, the bill for said work, amounting to $101,358.87, was allowed; that at said meeting of November 16, 1888, the whole expense of said work, including the expense of surveying, advertising, and preparing the assessment list, was duly determined by said common council to be the sum of $102,854.71;" also, "that in determining the expense of the work the common council of the city of Utica did not improperly include anything for catch-basins, man-holes, cross-walks, paving adjacent streets, or surveying or assistance in making the assessment by the city surveyor, or work upon fountain on said Genesee street." The special term found, as conclusions of law, viz.: "(1) That the said assessment is valid and legal in all respects, and the defendant the city of Utica is entitled to enforce and collect the same; (2) that the plaintiff is not entitled to an injunction as asked for in the complaint; (3) that the complaint therein should be, and hereby is, dismissed, with costs and disbursements, to be taxed both in favor of the city of Utica and the Warren-Scharf Asphalt Paving Company, and that judgment should be rendered for the defendants, and is hereby ordered in accordance with these findings of fact and conclusions of law." Judgment on the findings was entered on the 28th of November, 1890. Exceptions were filed to the findings, and certain additional findings were made, and a stipulation was given amending the case *nunc pro tunc*, and allowing exceptions thereto; which additional findings and exceptions and the stipulation, signed by the respective parties, were made a part of the case before the same was submitted to this court. From a judgment for defendants, plaintiff appeals. For former report, see 9 N. Y. Supp. 912.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*W. A. Matteson* and *P. C. J. De Angelis*, for appellant. *W. E. Lewis*, for Paving Company. *A. M. Beardslee*, for City of Utica, respondent.

HARDIN, P. J. Appellant's learned counsel, in their points, state, viz.. "We insist that it was unjust and inequitable for the common council to subject the owners of property fronting on the street repaved, or the tax-payers at large, to the payment of the expense of that portion of the repavement in question between the street-railroad tracks, and in the space two feet in width outside the outer rails. (2) Said assessment is illegal and void because it was made to include the expense of said repavement between the tracks, and for two feet outside the outside rails of the tracks, of the street railroad operated by the Utica Belt-Line Railroad Company. (3) Said assessment is illegal and void because it was made to include the expense of the repavement between the rails, and in the space two feet outside the rails, of the additional track laid in said street at the time of said repavement." We think these points have been disposed of adverse to the appellant by the decision made by the court of appeals when this case was before it on a former appeal. See 121 N. Y. 561, 24 N. E. Rep. 1009. In that decision it was held: "The private owners of property fronting on a street in said city have no vested

right or claim *de jure* that a railroad company lawfully operating its road in the street shall repave, or bear the expense of repaving, any portion of it. Accordingly, held, that said provision of the charter was not violated by the assessment upon the property benefited of two-thirds of the whole expense of repaving a street on which a street railroad was operated, without requiring the railroad company to pay or bear any portion of the expense." In *People* v. *Gilon*, 27 N. E. Rep. 282, the court of appeals referred to their decision made in this case, and followed and approved of the same, and further held that "street railroads are not, as a matter of course, benefited by the repavement of the streets through which they are laid, and, if they are not so in fact, they cannot be assessed with the expense of such improvements." Again, there is no finding of fraud, collusion, corruption, or bad faith on the part of the common council; and in *Talcott* v. *City of Buffalo*, 26 N. E. Rep. 263, it was held by the court of appeals that "a tax-payer cannot maintain an action to restrain the governing body in a city from official action, within its power and discretion, without a charge of fraud, collusion, corruption, or bad faith;" and that the statutes giving the tax-payer an action for waste and injury "were not intended to subject the official actions of boards, officers, or municipal bodies acting within the limits of their jurisdiction and discretion, but which some tax-payer might conceive to be unwise, improvident, or based on errors of judgment, to the supervision of the judicial tribunals." This court has already had occasion to cite and follow that case in disposing of *Sweet* v. *City of Syracuse*, 14 N. Y. Supp. 424, (decided at the last term of this court.) See opinion of MERWIN, J. The city had the statutory power to cause the street to be repaved, and incidentally the power to do such things as were necessary to carry out the statutory power conferred. *Schanck* v. *Mayor*, 69 N. Y. 444. In exercising such power and discretion, its errors or mistakes are not fatal, nor do they give the tax-payer a right to challenge them upon a collateral action, in the absence of fraud and bad faith. The burden of establishing the invalidity of the tax was upon the plaintiff, as there is no presumption that the municipal authorities acted illegally, or that the conditions precedent to their action have not been performed. *Tingue* v. *Village of Port Chester*, 101 N. Y. 294, 4 N. E. Rep. 625.

2. It is insisted in behalf of the appellant that the assessment was illegal and void because the common council passed a resolution April 6, 1888, before the plans and specifications for said work were prepared and filed. It seems that on the 16th of March, 1888, the common council adopted a resolution evidencing its determination to repave Genesee street from the northerly line of Eagle street southerly to the city line, and in that resolution directed its clerk "to give the requisite legal notice that at a meeting to be held Friday, April 6th, it will determine the kind of pavement to be laid." It is alleged in plaintiff's complaint "that on March 16, 1888, the daily newspapers known as the 'Utica Morning Herald' and the 'Utica Daily Observer' were, and ever since have been, the official papers of said city of Utica, printed daily. That said notice was published in said papers by the clerk of said city. That on the 6th day of April, 1888, at a meeting of the common council, the following resolution was passed: 'Resolved, that the clerk is hereby directed to publish the requisite notice for proposals for paving Genesee street, from the northerly line of Eagle street to the southerly line of the city, with Trinidad asphalt pavement, sheet surface, according to plans and specifications to be prepared by the city surveyor.'" A notice was published in the Utica Morning Herald, one of the official newspapers.

"It was published three times, three alternate days." It appears no action was taken under the publication of the first notice. Thereafter the clerk caused the requisite notice to be published for a meeting to be held on the 25th of May, 1888. That notice was published in the Utica Daily Observer on the 19th, 21st, 22d, 23d, 24th, and 25th days of May, and in the Utica

Morning Herald on the 19th, 22d, 23d, and 24th days of May. The plans and specifications for the proposed repavement were filed with the city clerk on or before May 18th, and on the 25th of May the proposals which had been made were opened and considered by the common council, and apparently the board on that day determined that the bid of Fowler & Baxter was most favorable. However, on a subsequent day, to-wit, the 28th of May, the resolution approving Fowler & Baxter's bid was rescinded, and one declaring the Warren-Scharf Asphalt Paving Company's proposal reasonable was adopted. At this last-mentioned meeting an ordinance was passed providing for the pavement, and the contract was awarded to the Warren-Scharf Company. By chapter 426 of the Laws of 1887, the charter of the city was amended, and section 99 of the charter, as amended by that act, expressly confers power upon the common council to cause any street to be paved or repaved; and in the section it is provided as follows: "Prior to the passage of any ordinance for such purpose, it shall cause a plan and accurate specification of the work proposed to be constructed to be prepared and filed with the city clerk." On the 19th of May the city clerk issued a notice stating that applications were pending before the common council, upon which final action would be taken on May 25th, "for the construction of the following improvements, to-wit: For the paving of Genesee street from the northerly line of Eagle street to the southerly line of the city, to be paved with Trinidad asphalt pavement, and to be completed on or before September 1, 1888. * * * The above work to be done according to plans and specifications on file with the city clerk, and to be assessed in accordance wth the provisions of the city charter. Sealed proposals with bond to do said work will be received by the mayor until Friday evening, May 25th, at seven o'clock." According to the testimony of McQuade, the city clerk, the notice "was published in the Observer, May 19th, 21st, 23d, 24th, and 25th." The same witness testifies that the original plans for said work were filed in his office May 11, 1888, and that the specifications for said work were filed in his office on the 18th of May, 1888. We think, within the provisions of the section already alluded to, "a plan and accurate specification of the work proposed to be constructed" were prepared and filed with the city clerk. Such filing was "prior to the passage of any ordinance" for the paving of the street, as the ordinance was not passed until the 28th of May. The statute then provides that after the filing the common council shall cause to be published in the official newspapers for three alternate days a notice of the filing of said plans and specifications, and that on a certain day, at least six days from the first publication thereof, the common council will act in relation to its construction.

We are of the opinion that a sufficient notice to answer the requirements of the statute was given, and that the publication thereof was a substantial compliance with the statute, and that therefore the common council had jurisdiction to receive the proposals for constructing the work, and to pass an ordinance for such purpose, and to let the contract, and that the letting of the contract was within the power and discretion of the common council. We think the notice given was sufficient to obtain the object in view. In *People* v. *Lacombe*, 99 N. Y. 49, 1 N. E. Rep. 599, it was said: "A strict and literal interpretation is not always to be adhered to, and, where a case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation; and, if these find fair expressions in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the law-makers." Strictly construed, section 99 of the charter only requires notice to be published in one official paper

on the alternate days mentioned in the statute. Such a publication was had, and although the notice was published in the Utica Morning Herald, and apparently by some oversight one of the alternate days was omitted, we think such omission does not invalidate the proceedings. The specifications reserved to the city surveyor and his assistant considerable power and discretion, and much criticism is made in respect thereto by the appellant. It was provided in the specifications: "The city surveyor may overrule his assistant and inspectors, and make any changes in the plans or nature of the construction of the work required to properly execute the designs of construction, and any extra compensation must be agreed upon in writing beforehand, or left to his decision. The city surveyor may change these specifications when he considers such changes necessary to their true meaning and intent; such change to take effect when the contractor is notified of the change or changes in writing by the city surveyor." While these specifications gave large discretion and power to the city surveyor, which, as the work progressed, he had occasion to and did exercise, we think the assessment cannot be disturbed by reason thereof. When the report of the city surveyor of the completion of the work was made, and when the contractor stated its claim for the construction, and presented the same to the council, and the council accepted the work, it necessarily approved and ratified the action of the city surveyor. In *Hitchcock* v. *Galveston*, 96 U. S. 348, it was said: "It is true, the council could not delegate all the power conferred upon it by the legislature, but, like every other corporation, it could do its ministerial work by agents." Although there are some "other questions arising in the case," they were considered by the first special term at which this case was tried, and on the review of the conclusion there reached we said they were "quite satisfactorily" considered and disposed of, when this case was before us on the former appeal. See close of opinion, 9 N. Y. Supp. 912. We think the judgment should be sustained. Judgment affirmed, with one bill of costs to the respondents. All concur.