W. J. Bowen *vs.* City of Minneapolis.

August 21, 1891.

**Statute, when Mandatory.**—There is no universal rule by which directory words in a statute may, under all circumstances, be distinguished from those which are mandatory; but it may be stated, generally, that whenever the public interests or individual rights call for the exercise of a power which has been given to public officers to perform, the language used in conferring the power, although permissive in form, is, in effect, imperative.

**Same—Act "Authorizing" City to Pay Money to Persons Named.**—The act of the legislature, (Sp. Laws 1889, *c.* 563,) which declared that the city council of the city of Minneapolis "are hereby authorized and empowered" to order payment and to pay a certain amount of money, with interest, to certain persons, including the plaintiff, *held* to be mandatory upon the council as to both principal sum and interest.

Action brought in the district court for Hennepin county, to recover $747.50, being interest at 7 per cent. per annum from August 10, 1888, on a claim of $11,325.50, for work done by plaintiff for defendant in grading streets, the principal having been paid by defendant under authority of Sp. Laws 1889, *c.* 563, considered in the opinion. The action was tried by *Young* and *Hooker,* JJ., (a jury being waived,) and judgment was ordered for plaintiff for the amount of his claim. A motion for a new trial was, by stipulation, heard by *Lochren,* J., and was denied, and the defendant appealed.

*Robert D. Russell,* for appellant.

*Healy & Miller,* for respondent.

Collins, J. We assume, in the determination of this case, that plaintiff, respondent, because of his failure to regularly enter into a contract with the defendant city, was remediless until the enactment of Sp. Laws 1889, *c.* 563, and place an affirmance of the order ap-

pealed from upon what we regard as the proper construction of that statute. It was entitled "An act legalizing certain claims against the city of Minneapolis, and authorizing the payment of the same." In the first section is found a preamble wherein it is recited that in the year 1887 this plaintiff and other persons rendered services for the use and benefit of said city, by grading certain streets under the supervision and direction of its engineer, which grading had been accepted and used by the municipality; that the council had thereafter determined the amount due plaintiff, and by a resolution adopted August 10, 1888, ordered its payment. Following this preamble, in sections 2 and 3, the city council was "authorized and empowered" to order payment and to pay the amount, with interest from the day last mentioned; and, by the subsequently appearing paragraphs of section 3, the city clerk was also "authorized and empowered" to draw the necessary orders, the mayor to sign, the comptroller to countersign, and the city treasurer to pay, the same on presentation. The council duly caused the principal sum to be paid, but refused to allow interest, taking the position that the language used in chapter 563 was permissive, not mandatory, and that payment of any portion of plaintiff's claim, either principal or as interest, was entirely within its discretion. The right to recover this interest is now presented, and a solution of the question involves an interpretation of the statute—an ascertainment of the legislative intent when using the term "authorized and empowered." It is very clear from the facts, as found, as well as from the recitals in the law, that the defendant city was under a strong moral obligation to pay the amount of plaintiff's claim, and that, through its representatives, this obligation had been recognized on more than one occasion. Undoubtedly payment would have been made soon after the adoption of the resolution of August 10, 1888, but for judicial proceedings which intervened, wherein a temporary injunction prohibiting such payment was obtained and served upon the council and other city officers,—an injunction which remained in force until after the passage of chapter 563, when the court, expressly recognizing the power of the lawmakers to authorize or compel the payment of plaintiff's claim, dissolved and vacated it.

There is no universal rule by which directory provisions in a statute may, under all circumstances, be distinguished from those which are mandatory, and an examination of the adjudicated cases simply tends to confuse the examiner.    In the case of *Howard* v. *Bodington*, 2 Prob. Div. 203, Lord Penzance stated (p. 211) that in his belief, as far as any rule was concerned, one "cannot safely go further than that in each case you must look to the subject-matter, consider the importance of the provision  *  *  *  and the relation of that provision to the general object intended to be secured by the act, and, upon a review of the case in that aspect, decide whether the enactment is what is called imperative or only directory."    Again, in a case where the words used were merely permissive, it was said: "The conclusion to be deduced from the authorities is that where power is given to public officers in the language of the act before us, or in equivalent language, whenever the public interests or individual rights call for its exercise, the language used, though permissive in form, is in fact peremptory.    What they are empowered to do for a third person the law requires shall be done.    The power is given, not for their benefit, but for his.    It is placed with the depositary to meet the demands of right, and to prevent a failure of justice.    It is given as a remedy to those entitled to invoke its aid, and who would otherwise be remediless."    *Supervisors* v. *United States*, 4 Wall. 435, 446.    Guided by these views, and applying them to the circumstances in hand, we think that there is little difficulty in arriving at the legislative intent when the enabling or permissory words were used.    The defendant was morally bound to pay plaintiff's claim, and this moral obligation stood unquestioned.    The purpose of the legislators was to make it a legal claim, and the power which was conferred upon the council and upon other municipal officers, in permissory terms, was not for their benefit, but for the plaintiff's.    Among other things about the act itself, indicating the purpose, may be mentioned the use of the word "legalizing" in the title, and the recitals in section 1.    Again, the same permissive words were used with reference to the city clerk, the mayor, the comptroller, and the treasurer; and we do not suppose any one would urge that either of these officers could evade the performance

of a duty, after the council had allowed the plaintiff's claim, by contending that, as to him, the words were permissive and enabling only. In conclusion, upon this inquiry as to whether there was any discretion vested in the officers of the defendant city under the act of 1889, we call attention to a case strictly analogous in principle, and in which these same words appearing in a statute of like character were construed as compulsory, and not merely enabling. *People* v. *Supervisors of Herkimer Co.*, 56 Barb. 452.

It must be admitted that, if it was imperative upon the council to audit and make payment of the principal amount, it was also required to allow and pay interest thereon from the day specified in the act.

Upon the facts as they appeared at the trial, there is nothing in the point that plaintiff cannot recover, because he accepted payment of the principal. *Duluth Chamber of Commerce* v. *Knowlton*, 42 Minn. 229, (44 N. W. Rep. 2.)

Order affirmed.