### J. E. TUCKER v. BOARD OF COUNTY COMMISSIONERS OF LINCOLN COUNTY.[1]

November 6, 1903.

Nos. 13,659—(143).

**Change of County Seat.**

The requirement of Laws 1889, c. 174, § 1, that a duplicate of the auditor's notice of the meeting of the county board of commissioners to pass on the petition for a change of the county seat shall be posted ten days before such meeting "in a public place in each organized town in said county" (G. S. 1894, § 647), applies to an incorporated village within the territory of every town where the village has distinct political powers, and holds separate elections, at which the proposed change is to be submitted to the electors.

**Affidavit of Posting Notice.**

The filing of a sufficient affidavit with the county auditor previous to the meeting of the board, showing that a duplicate notice was posted in each town and village of the county, is a necessary prerequisite to the authority of the board to direct that a special election to vote on a change of a county seat be held; and, unless the statute is complied with in this respect, the order of the board for a special election confers no right to hold the same.

**Omission to File Affidavit—Curing Defect.**

In a contest under the county seat removal act, the omission to file a sufficient affidavit of the posting of duplicate notices of the meeting of the county board with the auditor prior to such meeting cannot be supplied by affidavits filed subsequent to the special election, nor can the court properly receive or act upon the same.

Appeal by plaintiff, contestant, from a judgment of the district court for Lincoln county, Webber, J., confirming and establishing a change of the county seat of Lincoln county from the village of Lake Benton to the village of Ivanhoe. Reversed and remanded.

*Somerville & Olsen, John McKenzie, C. W. Stites,* and *Warren Miller,* for appellant.

*John T. Power,* County Attorney, *Karns & Johnson, John Lind,* and *A. Ueland,* for respondent.

[1] Reported in 97 N. W. 103.

LOVELY, J.

Appeal from a judgment of the district court changing the county seat of Lincoln county from Lake Benton to Ivanhoe.

The petition to the county board for a special election under the county seat removal act (Laws 1889, c. 174, p. 286; G. S. 1894, §§ 647–656), with a sufficient number of signatures and accompanying affidavits of genuineness, was filed with the county auditor, who made an order for a special meeting of the commissioners to take action on the petition. The notice of such meeting was published in the newspapers of the county as required by law. The auditor issued duplicate notices of the time and place of the meeting, as required by law. The duplicates were posted within the proper time in a number of towns and villages of the county, but, under the claim of contestant, proof by affidavit of the posting of duplicates in all the towns was not filed with the county auditor prior to the meeting of the board of county commissioners. Under the view which we have taken of the issues properly tendered by the notice of contest, we regard this as the decisive question on this review.

Premising to a clear understanding of the precise way in which this question becomes important, it may be said that Lincoln county has fifteen townships, as well as the incorporated villages of Lake Benton, Tyler, Ivanhoe, and Hendricks. The village of Lake Benton is within the township of Lake Benton. Ivanhoe is within the township of Royal, and the village of Hendricks is within the township of Hendricks. Tyler is composed of territory within the boundary lines of the towns of Marshfield and Hope. Each of these villages is a legal division of the state, endowed with governmental functions and duties distinct from the town from which it has been separated by incorporation, while each of the towns and villages holds a separate election for all political purposes. The evidence of posting the auditor's duplicate notices of the intended meeting of the county board was an affidavit filed with the auditor before such meeting by the person who performed this duty. It appears therein that within the proper time previous to the date fixed for the meeting a notice was posted in the post office of Hendricks, which was in the village of Hendricks; that a notice was posted in the post office of Willno (afterwards Ivanhoe), in the town of Royal; that a notice was posted upon the posting board in the post

office of Tyler; and also that a notice was posted in the post office in the village of Lake Benton. It did not appear otherwise that, in the organized townships within which such villages were located, notices were posted, except in the town of Marshfield, in which a portion of Tyler is located.

These conditions led to the adoption of a finding by the trial judge stating these facts, but after the election an affidavit was filed with the county auditor for the purpose of supplying omissions in the affidavit before referred to. Upon the attention of the court being directed thereto, it struck out the qualifications of its findings showing that postings in the villages were made for the towns included therein, and found that the duplicates were duly posted in each town and village of the county. From the course thus pursued by the district judge, it is manifest that the view was adopted that the affidavit of posting might be filed after the meeting of the board, and that when filed subsequently it was sufficient to establish the facts therein set forth, as well as the conclusion of law that the county seat had been lawfully changed. It follows necessarily that, if a posting of a duplicate notice in any of these villages cannot be treated as a posting in the town within whose territory it was embraced, the result of the contest depends upon the further question whether the county board had the right to order the special election without sufficient proof of the posting being made and filed with the auditor before its meeting.

We have had little difficulty in reaching the conclusion that the requirement to post the notice in "each organized town of the county" is not complied with by posting it only in the included villages. It is a settled rule which has long been in force in this state that in construing the word "town," where it occurs in a statute, it may apply to "cities and districts, unless such construction would be repugnant to the provisions" thereof. G. S. 1894, § 255. We have held that, unless a contrary intention appears, the three classes of primary political divisions —towns, cities, and incorporated villages—either may be expressed by or included in the term "town," when used in a statute. A city or incorporated village constitutes the unit of political organization. "Each incorporated city shall have and exercise within its limits in addition to its other powers the same powers conferred * * * upon towns." G. S. 1878, c. 10, § 112 (G. S. 1894, § 1029). Hence the

word "town" is often used as a generic term embracive of all such primary municipal corporations as incorporated cities and villages; and it has become a well-settled rule of construction that the term "town," when used in a general statute, may be applied to or include cities, unless the contrary appears from the whole statute to have been the intent of the legislature. Odegaard v. City of Albert Lea, 33 Minn. 351, 33 N. W. 526.

A good reason for applying this construction to the statute now considered is easily illustrated. Many cities and villages in this state are embraced in the geographical limits of a town, where the latter is a separate entity for election purposes, and where the population of the city or village is often much greater than in the town. The object of the notice of the board's meeting is quite apparent, and it would be absurd to contend that a notice posted in a portion of the town outside of, and perhaps distant from, any portion of the district where the election is to be held, could be regarded as effective for the purposes intended. It might be that a posting of a notice in the town in a matter where voters of a city or village were interested would be misleading, and, to apply the rule we have already adopted, we must hold that the term "organized town," in the removal act, is inclusive of, and, for the purpose of construction, interchangeable with, the "incorporated village" therein, for there is no sensible reason why either should be distinguished from the other in giving practical effect to the statute.

Passing to the more serious question whether it was a condition precedent to the exercise of its authority by the county board to order the special election that a sufficient affidavit to show that duplicate notices of the meeting of the board had been filed, it is urged for contestant that such affidavit was necessary to show authority for the board to order the special election, and so was jurisdictional. While for the contestee it is claimed that it is the fact, rather than the proof of the fact, that is essential and important; hence that the affidavit filed before the meeting of the board was not material, but that the court might supply its omissions by affidavits of posting made subsequent to the meeting of the board or to the election. Which of these views is to be adopted—and there is no middle ground—requires a reference to the statute to ascertain its general purposes, and whether these have been limited by specific terms therein.

The removal act justifies the view that the change of a county seat may be required, to meet the demands of progress, and so is a public necessity, but the liability to make unlawful use of the means adopted to secure the end seems to have been very apparent to the legislature. These difficulties were seriously appreciated, and it seems to have been the obvious purpose of the lawmakers to provide methods to secure the change that would be hedged about with safeguards to prevent a county seat from becoming a mere political football, to be frequently kicked about from one point to another at caprice by a mere majority of the voters. Smith v. Board of Co. Commrs. of Renville Co., 64 Minn. 16, 65 N. W. 956. It has been attempted to remove the issues of the contest, by a special election, from all other subjects of elective choice of the citizen. The special election, which is an onerous burden upon a county, is to be held only when more than a majority of the legal voters at a preceding election petition for the same. The ease with which petitions are obtained undoubtedly led to an effort to prevent any inconsiderate or unlawful use of the right of petition, by providing that the legal qualification of the signers shall be the privilege of voting on the question to be submitted.

In the sequential steps through which the contest at the polls is to be secured, a notice is first to be given of the intention to circulate the petition, obviously to put all persons interested upon inquiry, and to prepare them to provide for, and advisably oppose, if they desire, the holding of an election, upon proper grounds. The petition must contain sixty per cent. of all legal voters of the county at the last election, who sign sixty days before its presentation to the board, probably to test the present desirability of the change in the popular mind. Proof by affidavits attached to the petition are required, to show that the signatures are genuine, as well as that signers were legal voters. The auditor is then to examine the petition and the affidavits, and, if these steps have been complied with, is to give notice, in a prescribed form, of a special meeting of the board, at which all interested persons can appear, to show cause why such petition is insufficient. It is further provided that the auditor shall cause notice of the board's meeting to be published in the newspapers of the county, and by posting a duplicate thereof in each "organized town" of the county, affidavits stating facts showing the publications and posting "may be made by any per-

son having personal knowledge thereof, and upon being tendered to said county auditor for filing in his office shall be filed therein, and shall thereafter constitute and be prima facie evidence of the truth of the facts therein set forth in all actions, suits and proceedings." G. S. 1894, § 647.

In the next section it is provided that the board shall meet at the time specified in the notice, and continue its session from day to day, to comply with all the duties imposed by the statute; that the board shall inquire and determine which signatures attached to the petition are not genuine, and which if any were not attached within the sixty days preceding its filing. It is then, in terms, provided that

> "The affidavits accompanying said petition and filed in the office of the said county auditor, pursuant to the provisions of the preceding section, shall for the purposes of this act, be prima facie evidence of the truth of the matters stated therein." In addition thereto, the board "shall receive any competent evidence offered before them bearing upon the matters committed to their determination aforesaid; and, to that end, any legal voter in said county may appear before said board at said meeting in person or by counsel, and be heard in respect to said matters under such reasonable rules and regulations as the board may prescribe." G. S. 1894, § 648.

A remonstrance is provided for, which, when obtained under specified conditions, is to be considered. Ten days' time is then given for the board to deliberate and conclude its inquiry respecting the matters committed to it, when it is to file with the county auditor a certificate, the effect of which is to determine whether the proper petition, with the names of sufficient legal voters, justifies further action. G. S. 1894, § 648.

It has been held that any signer of the petition has a right to withdraw his name therefrom before final action of the board, but that such withdrawal can only be made to the county board, and that petitioners cannot do so before the county auditor. Slingerland v. Norton, 59 Minn. 351, 61 N. W. 322. After the filing of the certificate the auditor is required to make an order fixing the time for holding the special election, providing the petition shall have been signed by

the number of legal voters required as shown by the petition and accompanying affidavits.    G. S. 1894, § 649.

This statute has been subjected to the criticism of being an example of crude legislation. · Currie v. Paulson, 43 Minn. 411, 45 N. W. 854.   But its general purpose, without doubt, was to secure all legal rights of the people of the county, and protect them from the excitement and turmoil of an unnecessary election, the well-known hostilities engendered thereby, as well as the attendant distraction from his ordinary business affairs by the citizen.   Whatever else may be said in criticism of the language of the removal act, these are its paramount objects, to which the specific regulations therein are to be made subservient.   While the statute itself does not in express terms declare that an affidavit of posting the duplicates shall be made, as a precedent to ordering the election, it is inconceivable, in view of the importance attached to the giving of such notice, that proof thereof should be left entirely open, "in the air," dependent upon the mere conjectures or surmises of the county board.   As said in Currie v. Paulson, supra, there is no means designated for preserving the oral evidence taken before the board in matters which are committed to its determination, and, as to the genuineness of the signatures on the petition, it was there held that its decision was final; but, where there is a provision for the preservation of certain evidence to show the power of the board to act, it seems only just and reasonable to adopt the view that such provision is required, to preserve by record the proof provided for.

It has been held that the authority to order the election is to be determined upon the inspection of the proof of publication, and if proper notice was in fact given, upon such proof being made, it would be their duty to proceed.    State v. Board of Co. Commrs. of Scott Co., 43 Minn. 322, 45 N. W. 614.   This was decided upon mandamus to require the court to order the election; and counsel for contestee insist that we went no further than to excuse the board where it had failed to act for want of proper proof of the posting, but claim that, if the board had acted, the election would have been valid.   We are not able to accede to the view that such affidavit is not essential, for, if the board may act and order the election when it is not filed, then the duty of that body would depend upon a question of mere favor.   In a matter where the public interests are involved, and serious consequences af-

fect the action of public officers exercising quasi judicial functions, we cannot adopt the view that their inclination or pleasure can determine their duty. The terms of section 647, supra, which provide that the affidavit showing that the notices have been posted "may be made by any person having personal knowledge thereof" were undoubtedly intended to relate and apply to the person authorized to make the affidavit of posting, which need not be by the auditor, whose duty it is to cause the duplicates to be posted, but by the one who posted them, or who knew that this had been done. The permission to file the affidavit, taken in connection with the manifest purpose of the entire act to subserve the public interest and the rights of every interested elector, imposes an obligation which we do not think can be disregarded, but must be observed; hence this course, in the absence of other means of proof, must be treated as a positive requirement of law. Sutherland, St. Const. § 462; Bowen v. City of Minneapolis, 47 Minn. 115, 49 N. W. 683, 28 Am. St. Rep. 333, and cases cited.

It follows that the filing of a sufficient affidavit with the auditor, showing that the notice had been posted in proper places, was necessary, to confer authority upon the county board to order the election. Hence the affidavit filed after the election with the auditor, upon which the district court acted, did not justify its amended findings of fact, nor authorize the conclusions of law based thereon.

The judgment of the court below is reversed, and the cause remanded, with instructions that the findings and conclusions be amended to conform to the views above expressed.