STATE EX REL. TOWN OF SARGEANT AND OTHERS v.
COUNTY OF MOWER AND OTHERS.[1]

February 26, 1932.

No. 28,728.

[1]Reported in 241 N. W. 60.

*Otto Baudler,* County Attorney, for appellants (respondents below).

*Catherwood, Hughes & Alderson,* for respondents (relators below).

HILTON, J.

Appeal from an order overruling a demurrer interposed to relators' alternative writ of mandamus, the trial court certifying that the question was important and doubtful. Relators (respondents here) are the town of Sargeant and the members of the town board. The respondents below (appellants here) are the county of Mower and the members of its board of county commissioners. The parties will hereinafter be referred to as the town and the county.

The town sought by mandamus to compel the county to reconstruct a bridge situated on a town line road between it and the town of Dexter in said county. The former bridge on this location was built in 1888 by the county and was destroyed by fire in 1931. The cost of reconstructing it would be from $1,500 to $3,000.

Sp. L. 1885, p. 425, c. 175, placed upon the county commissioners of Mower county the duty of constructing, building, and keeping in repair all bridges built in said county except where the cost and expense should be less than $100. It also gave the county commissioners the general supervision of all bridges except where the cost and expense was less than $100, and empowered the county board to appropriate such sums of money from the county treasury as would be necessary to build, construct, and keep in repair such bridges. In 1885, when this law was passed, so-called special legis-

lation was permitted. The constitutional prohibition against such legislation did not become operative until 1892.

In 1931 the legislature passed c. 87 of the laws of that year, in which it was provided:

"That any county now or hereafter having a population of not less than 28,000 nor more than 28,500, according to the then last preceding state or federal census, shall build, rebuild and maintain all bridges in such county where the cost thereof shall be more than $300."

The county board was therein given general supervision over all such bridges and was empowered to appropriate the necessary money from the treasury to build, maintain, and repair them. It was further provided that the act should not apply to any bridge upon any county aid, state aid road, or any trunk highway, nor to any viaduct or bridge over or under any railroad or street car tracks. This law repealed all acts inconsistent therewith but did not expressly repeal the special law of 1885. Mower county has a population of more than 28,000 and less than 28,500 and is the only county in the state of Minnesota which has a population between those figures.

After the passage of the 1931 law the board of Sargeant township requested the commissioners of Mower county to rebuild the bridge in question. This request was refused on the ground that the county was not required to build the bridge at its cost. The sole question here involved is whether the trial court erred in over-ruling the demurrer. The county's contentions are: (1) That the 1931 law is unconstitutional and void because it is special legislation; (2) that the 1885 law was unconstitutional because its subject was not expressed in the title; (3) that if the 1885 law was valid it has been repealed by L. 1913, p. 290, c. 235, or by L. 1921, p. 406, c. 323. We consider these contentions in their order.

■ The pertinent constitutional provisions are found in art. 4, §§ 33 and 34. They read as follows:

"§ 33. In all cases when a general law can be made applicable no special law shall be enacted; and whether a general law could

have been made applicable in any case is hereby declared a judicial question, and as such shall be judicially determined without regard to any legislative assertion on that subject. The legislature shall pass no local or special law regulating the affairs of, * * * any county, * * *; authorizing the laying out, opening, altering, vacating or maintaining roads, highways, streets or alleys.

"§ 34. The legislature shall provide general laws for the transaction of any business that may be prohibited by section one [§ 33] of this amendment, and all such laws shall be uniform in their operation throughout the state."

These provisions have been considered by this court in numerous decisions. 1 Dunnell, Minn. Dig. (2 ed. & Supp.) § 1676, et seq. A full discussion thereof need not here be attempted. We are now concerned with the one question, and that is whether the 1931 law, based as it is on population alone, presents a proper classification. We think it does not.

"A classification must be based on substantial distinctions which make one class so different from another as to suggest the necessity of different legislation with respect to them. The characteristics which form the basis of the classification must be germane to the purpose of the law. There must be an evident connection between the distinctive features. The classification must be based upon some apparent natural reason." Millett v. City of Hastings, 179 Minn. 358, 361, 229 N. W. 346, 347.

Within our decisions the classification here involved is not permissible. See particularly Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922, 923; Hjelm v. Patterson, 105 Minn. 256, 117 N. W. 610, 127 A. S. R. 560; Driscoll v. Bd. of Co. Commrs. of Ramsey County, 161 Minn. 494, 201 N. W. 945; Jensen v. Independent School Dist. No. 17, 163 Minn. 412, 204 N. W. 49; State ex rel. Dedina v. School Board, 167 Minn. 421, 209 N. W. 531. We can see no reason why a county containing a population of not less than 28,000 and not more than 28,500 should be compelled to build and maintain bridges costing not less than $300, while counties not within the specified population limits should not be required so

to do. This classification (population limitation) has no natural relation to the subject matter and is in no way germane thereto; it is purely arbitrary.

"The legislature cannot adopt a mere arbitrary classification, for any classification for the purposes of legislation must rest upon 'such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them.'" Hunter v. City of Tracy, 104 Minn. 378, 381, 116 N. W. 922.

The town in its petition recited at length the topography of the county, including the large number of watercourses therein; the building by the county of a large number of bridges and the necessity therefor; the expenditure of upwards of three-quarters of a million dollars thereon; the issuance of bonds for such purpose in 1917 in the sum of $200,000; the burden that will fall upon relator and other towns if relief asked for is not granted. With these allegations we are not concerned. The constitutionality of the 1931 law must be determined upon its face—the bare limitation as to population contained therein—without reference to extrinsic matters set forth in the petition. Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922. Legislation has been sustained where one or more of the following classifications were involved; population, area, assessed valuation. In each instance however the classification was not open to the objections above recited. We hold the 1931 law unconstitutional.

■ Art. 4, § 27, of the state constitution, provides:

"No law shall embrace more than one subject, which shall be expressed in its title."

The title of the 1885 law authorizes Mower county to build, construct, and keep in repair the bridges in the county. In the act itself it provides that the county commissioners shall do so. The suggestion that the subject matter of the act is not expressed in the title is without merit. The authorization in the title and the requirement in the body of the act, having to do with the duties of

the county board, mean the same thing. The former is not merely permissive. In State ex rel. Skyllingstad v. Gunn, 92 Minn. 436, 443, 100 N. W. 97, 100, it is stated:

"The rule is that, whenever public interests or individual rights call for the exercise of a power given to public officers, the language used in conferring the power, although permissive in form, is in effect imperative."

See also Bowen v. City of Minneapolis, 47 Minn. 115, 49 N. W. 683, 28 A. S. R. 333; Tucker v. Bd. of Co. Commrs. of Lincoln County, 90 Minn. 406, 97 N. W. 103; Hunter v. City of Tracy, 104 Minn. 378, 116 N. W. 922. There are federal cases to the same effect. Supervisors v. U. S. 4 Wall. 435, 18 L. ed. 419; State of Maryland v. Miller (C. C. A.) 194 F. 775; Chase v. U. S. (C. C. A.) 261 F. 833; U. S. Sugar E. Board, Inc. v. P. De Ronde & Co. Inc. (C. C. A.) 7 F. (2d) 981.

We hold the 1885 law, which was permitted as special legislation at the time of its enactment, constitutional.

■ The remaining question is whether the 1885 law was repealed by L. 1913, p. 290, c. 235, or by L. 1921, p. 406, c. 323. In art. 4, § 33, state constitution, it is provided:

"The legislature may repeal any existing special or local law, but shall not amend, extend or modify any of the same."

Neither the 1913 nor the 1921 law expressly repealed the 1885 law. They could not amend or modify it. The 1913 law (commonly known as the Dunn state aid road law) was a general law relating to state, county, and town roads. The 1921 law (passed after the adoption of the so-called Babcock amendment) was a general trunk highway act. We have carefully examined them both and find no reason for holding them repugnant to, inconsistent with, or in any way releasing the county from the obligations placed on it by the 1885 law. The 1885 law still remains in full force and effect. Of interest on this branch of the case are State ex rel. Seng v. Peter, 101 Minn. 462, 112 N. W. 866; State ex rel. Stortroen v. Lincoln, 133 Minn. 178, 158 N. W. 50; Automatic S. A. Co. v. Babcock, 166 Minn. 416, 208 N. W. 132.

We conclude, and so hold, that the 1931 law is unconstitutional; that the 1885 law was a valid enactment and was not repealed by either the 1913 or the 1921 law.

The order of the trial court overruling the demurrer is affirmed.

