# STATE v. OLIVER IRON MINING COMPANY.
# STATE v. PROCTOR WATER & LIGHT COMPANY.[1]

December 29, 1939.

Nos. 32,312, 32,313.

Reargument denied April 26, 1940.
See 207 Minn. 637.

[1]Reported in 292 N. W. 407.

*Elmer F. Blu, Clarence J. Hartley,* and *Kellogg, Morgan, Chase, Carter & Headley,* for appellants.

*J. A. A. Burnquist,* Attorney General, and *John A. Pearson* and *Irving M. Frisch,* Special Attorneys, for the State.

LORING, JUSTICE.

These suits were brought by the state under the provisions of L. 1933, c. 405, § 45(a), by filing statements with the district court for the purpose of recovering taxes for the calendar year 1933, claimed to be due from the defendant corporations under the provisions of that act.

The defendants and numerous other corporations operating in the state were, during the year 1933, owned by the United States Steel Corporation, 100 per cent of all their voting stock being owned by that corporation, which does not operate in this state except through its subsidiaries.

The question presented by these appeals is whether or not these affiliated corporations must be taxed as though the combined entire taxable net income were that of one corporation. It is the position of the defendants that they must be so taxed, and it is the contention of the state that it lies within the discretion of the commission so to tax the affiliated corporations, or to assess them severally for the tax provided for in c. 405. It so happens in this case that if they be taxed as one corporation their losses are such

that they have no taxes to pay, whereas if they be severally assessed for the taxes in question some of the corporations will be liable for a tax.

Decision of the controversy lies in the proper construction of subd. (c) of § 32 of c. 405, the last sentence of which reads as follows:

"If 90% of all the voting stock of two or more corporations is owned by or under the legally enforceable control of the same interests the Commission may impose the tax as though the combined entire taxable net income was that of one corporation except that the credit provided by Section 27(e) shall be allowed for each corporation; but inter-company dividends shall in that event be excluded in computing taxable net income."

Counsel for the state, contending for the discretionary power of the commission, concede that the commission may not exercise such discretion merely for profit to the state but contend that the sentence was appended to the section for the purpose of assisting the commission in preventing tax evasion. Their contention rests principally upon the ground that the other provisions of § 32 are devoted to the prevention of tax evasion and that this sentence was added solely in furtherance of a like purpose. The trial court followed their reasoning and decided in favor of the state upon the question now before us. On the other hand, the defendant companies take the position that the word "may" as it appears in the quoted sentence must be read as "shall" and that where 90 per cent or more of all voting stock of two or more corporations is owned or controlled by the same interests the commission must impose a tax as upon one corporation. They are supported by the legislative history of the section, which was taken from the Wisconsin law then in force and which, with the exception of the last sentence, read the same as the first sentence of subd. (c) except that after the words "Tax Commission may" there were inserted the words "permit or."

For convenience, the Wisconsin law[2] and the Minnesota law[3] are appended in parallel columns in a note hereto. Subd. (b) of § 32, obviously calculated to prevent tax evasion, is similar to the Wisconsin law in force at the time of the enactment of our c. 405. Subd. (a) provides a penalty upon corporations formed for the purpose of splitting up the income of stockholders with a view to reducing the total amount of their taxes under the act. Subd. (b) provides that the commission may determine what the amount of corporate income should have been where a corporation distributes its products to its corporate shareholders at a price which creates

---

[2]Wisconsin St. 1931, § 71.25(2).

"(2) For the purpose of this chapter, whenever a corporation which is required to file an income tax return, is affiliated with or related to any other corporation through stock ownership by the same interests or as parent or subsidiary corporations, or whose income is regulated through contract or other arrangement, the tax commission may require such consolidated statements as in its opinion are necessary in order to determine the taxable income received by any one of the affiliated or related corporations."

[3]Minn. Laws 1933, c. 405, § 32(c).

"(c) Whenever a corporation which is required to file an income tax return is affiliated with or related to any other corporation through stock ownership by the same interests or as parent or subsidiary corporations, or has its income regulated through contract or other arrangement, the Tax Commission may permit or require such consolidated statements as in its opinion are necessary in order to determine the taxable net income received by any one of the affiliated or related corporations. If 90% of all the voting stock of two or more corporations is owned by or under the legally enforceable control of the same interests the Commission may impose the tax as though the combined entire taxable net income was that of one corporation except that the credit provided by Section 27(e) shall be allowed for each corporation; but inter-company dividends shall in that event be excluded in computing taxable net income."

a loss or improper net income. The part of the Wisconsin law which parallels in part our subd. (c) of § 32 was not adopted by the Wisconsin legislature until August, 1927, after the supreme court of Wisconsin in Cliffs Chemical Co. v. Wisconsin Tax Comm. 193 Wis. 295, 214 N. W. 447, had held that the word "may" in the part of their act which corresponds to our subd. (b) was properly construed as "shall." It is likely that the Wisconsin legislature took the view that the word "may" as used by it in the 1927 amendment should likewise be so construed; but, however that may be, at the time the bill which resulted in c. 405 was before the Minnesota legislature the Wisconsin tax commission had assumed that the 1927 amendment to their law (corresponding to the first sentence of our § 32[c]) empowered it to impose a tax upon affiliated corporations as one corporation, and its position had been sustained by the circuit court but was involved in an appeal to the supreme court of that state. Thus it will be seen that the question of the tax commission's power was in litigation in Wisconsin at the time that c. 405 was under consideration in Minnesota. The Wisconsin supreme court subsequently held that the Wisconsin tax commission did not have the power that it had assumed. Curtis Companies, Inc. v. Tax Comm. 214 Wis. 85, 251 N. W. 497, 92 A. L. R. 1065. It seems obvious that with that litigation in mind the Minnesota legislature attached the last sentence of subd. (c) for the purpose of making the powers and duties of the Minnesota tax commission clear; that it sought to give the Minnesota commission the power the Wisconsin commission claimed. In the Curtis case the taxing of the Curtis corporations as one corporation or of the parent corporation as sole taxpayer would have resulted in a larger tax than if the companies were taxed separately, and it appears to us that normally that would be the result. Certainly it would be if all the affiliated corporations were making a profit, because of the higher rate of taxation imposed by the graduated tax. We are convinced that our legislature intended the imposition of a tax upon the affiliated corporations described in the last sentence of § 32(c) as if they were but one corporation, a provision

which is obviously fair and which under normal conditions would be profitable to the state as imposing a higher rate of taxation. It is clear that such a construction of the tax is normally in the interest of the state. Where graduated surtaxes are imposed, any other construction of the act would be unfair to the state as permitting what is actually one taxpayer to be divided into several so that a lower rate would be applicable.

Constitutional questions for the present aside, it would appear that subds. (a) and (b) of § 32 provide penalties which the legislature intended for tax evasion by corporations. Particularly, subd. (a) provides a penalty for splitting up income by means of affiliated corporations when organized for that purpose. It could hardly be said that affiliated corporations created prior to the enactment of c. 405 were subject to the 10 per cent penalty under § 32(a). We are convinced that the Minnesota legislature did not intend by the last sentence of subd. (c) to impose a discretionary penalty on affiliated corporations in addition to the 10 per cent penalty authorized in subd. (a) against the use of corporations for splitting up income. Subd. (c) applies to affiliated corporations created prior to the act as well as those created subsequently. Obviously subd. (a) applies to those created for the purpose of evading the provisions of the act. Certainly we should not imply such additional penalty, if it is one, from the mere fact that subd. (c) is associated with penalizing subdivisions. The language is too clear to admit of any such implication. No attempt is made in subd. (c) to define the character of any tax evasion for which the claimed penalty may be imposed by the commission, and it is significant that counsel for the state cannot suggest any concrete example of tax evasion peculiar to affiliated corporations, and not described in and penalized by subds. (a) and (b), for which the commission might be justified in imposing the combined tax upon affiliated corporations. To us it seems clear that the legislature intended a tax always to be imposed and not a penalty for some undefined evasion.

By the first sentence of subd. (c) the tax commission is empowered and we think compelled to require and permit consoli-

dated tax statements from affiliated or related corporations for the purpose of determining the taxable income of any one of such corporations, and we think it makes plain common sense and discloses the obvious intent of the legislature to interpret the word "may" in the last sentence as "shall" and thus to require the imposition of one income tax upon a group of affiliated corporations where 90 per cent or more of the voting stock is held by one interest. To adopt the state's contention would be to enable a group of affiliated corporations to avoid a perfectly fair combined tax by scrupulously avoiding the suspicion of evasion when such a course seemed profitable.

2. Moreover, where a power is conferred to be exercised for the benefit of the state or a private party, the word "may" is to be construed to mean "must," and the statute is mandatory. Supervisors v. United States, 4 Wall. 435, 18 L. ed. 419; Bowen v. City of Minneapolis, 47 Minn. 115, 49 N. W. 683, 28 A. S. R. 333; Babcock v. Collins, 60 Minn. 73, 61 N. W. 1020, 51 A. S. R. 503.

3. Without defining the conditions which the commission must find before it could impose a penalty, the legislature could not, as the state claims, leave the imposition of the penalty to the discretion of the commission. There would be an unconstitutional delegation of legislative powers. A. L. A. Schechter Poultry Corp. v. United States, 295 U. S. 495, 55 S. Ct. 837, 79 L. ed. 1570, 97 A. L. R. 947. There would also be a lack of uniformity which would violate our constitutional requirements (Minn. Const. art. 9, § 1, as well as U. S. Const. Amend. XIV) if discrimination resulted. We therefore give the statute an interpretation in harmony with the constitution.

4. Nor does it offend our tax law or any provision of c. 405 that the affiliated or related corporations which have no tax status in this state are not joined in the consolidated returns. As we regard it, if all of the affiliated corporations which are taxable in this state join in the consolidated return it is a sufficient compliance with our law although there may be other affiliated corporations having no tax status here.

The judgments appealed from are reversed with directions to the trial court to enter judgment in accordance with the views expressed in this opinion.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.