**WESTINGHOUSE ELECTRIC CORPORATION and Thermo King Corporation, Relators,**

v.

**COMMISSIONER OF REVENUE, Respondent.**

**No. CX–86–990.**

Supreme Court of Minnesota.

Dec. 19, 1986.

Richard T. Diamond, Gene N. Fuller, Minneapolis, for relators.

Thomas R. Muck, Deputy Atty. Gen., Dept. of Revenue, St. Paul, for respondent.

YETKA, Justice.

This case comes on appeal from the opinion of the Minnesota Tax Court denying the request of relators, Westinghouse Electric Corporation and Thermo King Corporation, for refund of alleged overpayments made during the years 1972 through 1976. We affirm.

Relator Westinghouse Electric Corporation (Westinghouse) is a Pennsylvania corporation which does business in Minnesota. Relator Thermo King Corporation (Thermo King) is a wholly owned subsidiary of Westinghouse. Thermo King is incorporated in Delaware and has its principal place of business in Minnesota. Westinghouse Electric Export Corporation (WEEX), a Delaware corporation, is a wholly owned subsidiary of Westinghouse. WEEX was created on December 22, 1971, as a domestic international sales corporation (DISC) for federal income tax purposes under 26 U.S.C. §§ 991, *et seq.* (1982) and was so treated for the years 1972 through 1976. WEEX earned money solely from commissions paid with respect to export sales of products and related services by Westinghouse, Thermo King and other wholly owned subsidiaries of Westinghouse along with interest earned on those commissions. Essentially, WEEX was a paper corporation created to take advantage of certain tax benefits designed to stimulate overseas exports by U.S. companies. The parties have stipulated, for the purposes of this case, that, for the years 1972 through 1976, Westinghouse, Thermo King and WEEX constituted a unitary business.

Relators timely filed their respective Minnesota income tax returns for the years 1972 through 1976, but deducted from their taxable income sums paid to WEEX in commissions. In 1978, the Minnesota Commissioner of Revenue (commissioner) proposed to disallow the claimed deductions as well as make other adjustments to the relators' taxes not at issue here. The relators protested this proposal, but further action was delayed pending this court's decision in *Bunge Corp. v. Commissioner of Revenue*, 305 N.W.2d 779 (Minn.1981), a case involving a similar question of DISC commission deductions.

On June 15, 1981, after *Bunge* was decided favorably to the commissioner, the commissioner issued a notice of change to Westinghouse and Thermo King increasing their taxes for 1972 through 1976 by $144,996 and $729,614 respectively. The additional assessments stemmed mostly from the disallowance of commission expenses paid to WEEX by Westinghouse and Thermo King in the total amount of $240,225,522. On August 12, 1981, relators filed separate appeals from the commissioner's order. The case was held in abeyance in tax court pursuant to an agreement between parties to await the outcome of test case litigation between relators and the State of New York in which relators raised many of the same constitutional objections to a New York tax assessment as they did to Minnesota's assessment. *See Westinghouse Electric Corp. v. Tully*, 55 N.Y.2d 364, 449 N.Y.S.2d 677, 434 N.E.2d 1044 (1982), *reversed*, 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984). On June 14, 1983, relators paid the amount of the alleged tax with interest so as to prevent the

accrual of further interest. This payment was made without forfeiting any rights to appeal.

*Westinghouse v. Tully* did not resolve the issues presented by this case and, thus, in 1984, this case again became active. Relators pressed two claims before the Minnesota Tax Court: the original claim that the commissions paid to WEEX should have been deductible and a new claim that the relators had been assessed incorrectly from 1972 through 1976 and, therefore, relators deserved a refund of taxes during those years. The legal basis for this second refund claim was the relators' contention that, despite their individual corporate status, Westinghouse and Thermo King operate as a unitary company and should have been permitted to report on a combined basis instead of separately.

The tax court added two statements labeled "Findings of Fact" to the party's agreed stipulation of facts, namely, that relators had filed no additional or amended income tax returns and that the commissioner did not abuse his discretion in failing to assess relators' income taxes on a unitary basis. The tax court then proceeded to hold against relators on both claims.

The issues on appeal are:

 I. Did the tax court judge err in appending his own findings of fact to the stipulation agreed to by the parties?

 II. Was relators' request for a reassessment of their 1972–1976 taxes barred by the statute of limitations?

 III. Was it improper to assess the relators' taxes on a separate, rather than unitary, basis for the years 1972 through 1976?

 IV. Do Minnesota statutes improperly delegate legislative authority to the Commissioner of Taxation?

 V. Does Minnesota's method of taxing relators violate constitutional due process?

Relators argue that the judge erred by adding his own findings of facts to the stipulation of facts reached by the two parties. There is no statute or case law that directly addresses this issue. However, in the analogous situation where parties stipulate agreement to a referee's findings of fact, "only questions of law arising upon the report shall thereafter be considered." Minn.R.Civ.P. 53.05(4). *Cf. Hoene v. Jamieson*, 289 Minn. 1, 182 N.W.2d 834 (1971) (court is not bound by terms of stipulation which purports to decide question of law).

In this case though, the statements labeled "Findings of Fact" by the tax court are interpretable as legal inferences from the stipulation. This is clearly true of Finding No. 26—that the commissioner did not abuse his discretion in failing to assess relators' income taxes on a unitary basis. Both parties agree in their briefs that this finding is a conclusion of law.

 Finding No. 25—that relators filed no additional or amended returns—is more problematic. As written, it is clearly a statement of fact. However, it is also true that relators had the burden of demonstrating that they had filed a return so as to avoid an applicable statute of limitations. Neither in the stipulation nor appellate briefs did relators allege that additional or amended returns had, in fact, been filed. At oral argument before this court, they conceded they had not. Thus, the judge would have been justified in reaching the conclusion of law that the relators had not sustained their burden of proof of showing that they had filed amended or additional returns. Finding No. 25 is incorrectly phrased, but has the same effect as that legal conclusion. Thus, if there were errors on the part of the tax court, the errors were harmless.

One of the two claims made by relators is that the 1972–76 taxes for Westinghouse and Thermo King were improperly calculated. The tax court below determined that this claim was barred by Minn.Stat. § 290.-50, subds. 1–2, 4 (1984)—the statute of limitations for claiming tax refunds. In relevant part, the statute states:

 Subdivision 1. * * *.

(a) A taxpayer who has paid or from whom there has been collected an amount of tax for any year in excess of the amount legally due for that year, may file with the commissioner a claim for a refund of such excess. Except as otherwise provided in this section, no claim or refund shall be allowed or made after three and one-half years from the date prescribed for filing the return (plus any extension of time granted for filing the return, but only if filed within the extended time) or after two years from the date of overpayment, whichever period is longer, unless before the expiration of the period a claim is filed by the taxpayer. For this purpose an income tax return or amended return claiming an overpayment shall constitute a claim for refund.

\* \* \* \* \* \*

Subd. 2. If the claim is denied in whole or in part, the commissioner shall mail an order of denial to the taxpayer in the manner prescribed in section 290.46. An appeal from this order may be taken to the Minnesota tax court in the manner prescribed in section 271.06, or the taxpayer may commence an action against the commissioner to recover the denied overpayment. Such action may be brought in the district court of the district in which lies the county of his residence or principal place of business or if an estate or trust, of the principal place of its administration, or in the district court for Ramsey county [sic]. The action in the district court shall be commenced within 18 months following the mailing of the order of denial to the taxpayer. If a claim for refund is filed by a taxpayer and no order of denial is issued within six months of the filing, the taxpayer may commence an action in the district court as in the case of a denial, but the action shall be commenced within two years of the date that the claim for refund was filed.

\* \* \* \* \* \*

Subd. 4. If the commissioner and the taxpayer have within the periods prescribed in subdivision 1 consented in writing to any extension of time for the assessment of the tax under the provisions of section 290.49, subdivision 8, the period within which a claim for refund may be filed, or a refund may be made or allowed, if no claim is filed, shall be the period within which the commissioner and the taxpayer have consented to an extension for the assessment of the tax and six months thereafter, provided, however, that the period within which a claim for refund may be filed shall not expire prior to two years after the tax was paid.

By agreement, the time for recovering the taxes allegedly due on the DISC commission deductions was extended, pending resolution of a similar case before the Minnesota Supreme Court. Within the time allowed, on August 12, 1981, relators appealed the commissioner's order assessing additional tax. Thus, according to Minn. Stat. § 290.50, subd. 4 (1984), relators had until 6 months later, or December 12, 1981, to file a refund claim and escape the limitation established in Minn.Stat. § 290.50, subd. 1 (1984).

Minn.Stat. § 290.50, subd. 1 (1984) states that "an income tax return or amended return claiming an overpayment *shall* constitute a claim for refund." (Emphasis supplied.) According to Minn.Stat. § 645.-44, subd. 16 (1984), "shall," when used in a statute, is to be interpreted as being mandatory. Thus, strictly interpreted, section 290.50, subdivision 1 requires a claim for refund to be in the form of an income tax return. Relators never filed amended or additional tax returns that set forth a claim of improper assessment for the years 1972–76.

However, it seems more equitable to read section 290.50, subdivision 1 as saying that amended or additional tax returns are only one means of filing a refund claim, allowing any other protest that is equally clear and specific also to serve that function. In the present case, relators wrote a letter to the commissioner on October 23, 1978, protesting Minnesota's refusal to al-

low relators to deduct DISC commissions as business expenses. In the middle of ten single spaced pages of argument are the following two sentences:

It appears that the Commissioner has considered the matter of DISC taxation and that pursuant to the authority granted him under § 290.34, Subd. (2) has required the consolidation of DISC corporations with their affiliates.

Such a consolidation in the case of WELCO, T.K. and WEEX results in a setoff and/or a claim for refund in the amount of $1,799,279 computed as set forth in the attached schedule.

Attached to the protest letter is a page apparently comparing the taxes that Westinghouse and Thermo King actually paid from 1972 to 1976 with the taxes they would have paid if they had been considered a single business.

■ Though the issue raised in the excerpted language is substantially the issue presently argued by relators, the protest letter only awkwardly fits the category of a refund claim. The letter does not actively request a refund, but merely notes that the apparent consolidation practiced by the commissioner "results in a setoff and/or a claim for refund." The surrounding language of the lengthy protest letter is entirely concerned with arguments against paying more taxes, not a claim for a refund. The refund issue was so obscured, in fact, that it is not even mentioned in the reply letter from the Department of Revenue on December 11, 1978.

Relators also point to their appeal on August 12, 1981, from the commissioner's order assessing taxes on the DISC commissions. However, that appeal's specific objection was to the commissioner's decision to disallow the relators' business deductions. Relators' appeal does not allude in any respect to their later claim that the income taxes they had already paid had been wrongly assessed. Thus, the 1981 appeal is an even less likely candidate for a refund claim than the 1978 protest letter. It does not appear to us unreasonable to require some formal action making it clear

that a refund is sought to make such a request effective rather than merely mentioning the possibility by letter.

■ Even if they had filed a refund claim, relators must still satisfy other requirements of Minn.Stat. § 290.50 (1984) to preserve their claim. Minn.Stat. § 290.50, subd. 2 (1984) requires that a taxpayer commence an action in a district court within 2 years of a refund claim if the commissioner does not reply to a protest letter, as was the case here. Even if the 1978 protest letter is interpreted to be a refund claim, relators' time for filing the claim expired in 1980; if the 1981 appeal is so interpreted, the time expired in 1983. The relators have never directly instituted a separate legal claim for a tax refund. Instead, the claim that relators were overassessed first appeared as a separate argument in relators' pretrial statement of their appeal to preserve the DISC commission business deductions on July 30, 1984. To avoid the effects of the statute of limitations, relators argue both that the commissioner was fully aware of their position during the long course of litigation from 1978 onwards and that it would have been futile to make a refund claim given the commissioner's known hostility towards their position. There is no evidence among the stipulated facts to support these claims. Even if there were, the general rule in Minnesota is that there are no exceptions to statutes of limitation unless expressly provided, no matter how unjust or inequitable the enforcement of the statute. *State v. Bies*, 258 Minn. 139, 103 N.W.2d 228 (1960).

However, we decline to rest solely on the statute of limitations to decide this case. Even had relators timely protested, we would hold their refund claim invalid.

Minnesota only taxes a portion of the income of a business that conducts operations both within and without the state. The percentage is determined by comparing the sales, payroll and property connected to the state with the company's total sales, payroll and property. Minn.Stat. § 290.19, subd. 1(1)(a)–(c) (1984).

As it read in the 1970's, section 290.19 did not specifically provide corporations owning or owned by other corporations with the option of combined reporting, *i.e.* having their percentage of in-state payroll, sales and property compared with the total of payroll, sales and property for all of the corporation's affiliated companies. However, relators argue that this method of reporting was available, relying on two statutes that give the Commissioner of Taxation the discretion to vary the method of assessment. According to Minn.Stat. § 290.20, subd. 1 (1984):

> The methods prescribed by section 290.19 shall be presumed to determine fairly and correctly the taxpayer's net income allocable to this state. Any taxpayer feeling aggrieved by the application to his case of the methods so prescribed may petition the commissioner for determination of such net income by the use of some other method, including separate accounting. Thereupon, if the commissioner finds that the application of the methods prescribed by section 290.19 will be unjust to the taxpayer, he may allow the use of the methods so petitioned for by the taxpayer, or may determine such net income by other methods if satisfied that such other methods will fairly reflect such net income.

More specifically, Minn.Stat. § 290.34, subd. 2 (1974) provided that:

> When a corporation which is required to file an income tax return is affiliated with or related to any other corporation through stock ownership by the same interests or as parent or subsidiary corporations, or has its income regulated through contract or other arrangement, the commissioner of revenue may permit or require such consolidated statements as, in his opinion, are necessary in order to determine the taxable net income received by any one of the affiliated or related corporations.

The relators argue that the commissioner should have exercised his discretion under section 290.34, subdivision 2 to allow combined reporting for Thermo King and Westinghouse.

As a preliminary issue, it is unclear whether the "consolidated statements" allowed by section 290.34, subdivision 2 are the same as the "combined reporting" that relators desire. Prior to 1941, the relevant Minnesota statute stated that:

> Whenever a corporation which is required to file an income tax return is affiliated with or related to any other corporation through stock ownership by the same interests or as parent or subsidiary corporations, or has its income regulated through contract or other arrangement, the Tax Commission may permit or require such consolidated statements as in its opinion are necessary in order to determine the taxable net income received by any one of the affiliated or related corporations. If 90% of all the voting stock of two or more corporations is owned by or under the legally enforceable control of the same interests the Commission may impose the tax as though the combined entire taxable net income was that of one corporation except that the credit provided by Section 27(e) shall be allowed for each corporation; but inter-company dividends shall in that event be excluded in computing taxable net income.

Act of April 21, 1933, ch. 405, § 32(c), 1933 Minn.Laws 713–14. In *State v. Oliver Iron Mining Co.*, 207 Minn. 630, 292 N.W. 407 (1939), this court considered the argument of certain subsidiaries of United States Steel Corporation that the above statute required all the subsidiaries to be taxed as one company.. The court held that:

> By the first sentence of subdivision (c) the tax commission is empowered and we think compelled to require and permit consolidated tax statements from affiliated or related corporations for the purpose of determining the taxable income of any one of such corporations, and we think it makes plain common sense and discloses the obvious intent of the legislature to interpret the word "may" in the

last sentence as "shall" and thus to require the imposition of one income tax upon a group of affiliated corporations where 90% or more of the voting stock is held by one interest.

*Id.,* 207 Minn. at 635–36, 292 N.W. at 410. The court thus apparently distinguished between requiring consolidated statements from related companies for the purpose of determining the taxable income of particular businesses and imposing a single tax on the income of a group of affiliated companies.

The last sentence of subdivision (c), which the court, in *Oliver*, interpreted as requiring combined reporting, was quickly deleted by the legislature. Act of April 26, 1941, ch. 458, 1941 Minn.Laws 833–34. At the same time, the legislature added a new statute, ch. 458, 1941 Minn.Laws (later Minn.Stat. § 290.34, subd. 3 (1974)), which stated that certain affiliated groups—specifically streetcar companies operating entirely inside Minnesota– "shall have the privilege of filing a consolidated return in lieu of separate returns * * *." Act of April 26, 1941, ch. 458, § 2, 1941 Minn. Laws 834–35. The phrase "consolidated returns" meant the same method of combined reporting required in *Oliver. See Oliver,* 207 Minn. at 636, 292 N.W. at 411. This still leaves a distinction between the "consolidated return" allowed in section 290.34, subdivision 3 (1974) and the "consolidated statements" of section 290.34, subdivision 2 (1974). The latter is an accounting device used to find the net income of particular companies in an affiliated group by having their income statements considered together. *See, e.g., Honeywell, Inc. v. Commissioner of Revenue,* Minn. Tax Court Docket Nos. 2880, 2881 p. 45 (June 4, 1984). In *Honeywell,* the company had made an application to the commissioner to consolidate income statements for itself and certain wholly owned subsidiaries so as to ensure that certain intercompany transactions would be disregarded and the income of each corporation reported accurately. *Id.* at 8. Though the tax court in Honeywell likened the effect of consolidated statements to combined reporting, it is fairly

clear that the court recognized these concepts as distinct, at least in that after-income statements were consolidated and the income was then equitably attributed to individual companies and individually taxed. *Id.* at 45.

In 1982, the legislature amended Minn. Stat. § 290.34, subd. 2 (1980) so as to allow the commission to "permit or require such combined report as, in his opinion, are [sic] necessary * * *," deleting the phrase "consolidated statements." 1982 Minn.Laws, 1981 3rd Spec.Sess., ch. 2, art. 3, § 15.

To summarize this legislative history, it seems clear that Minn.Stat. § 290.34, subd. 2 (1984) never gave the commissioner specific authority to allow combined reporting, except for streetcar companies, until 1982. The commissioner may still have had such power, but its source would have had to have been section 290.20, subdivision 2's general grant of authority to change assessment procedures where to do so would be more fair. However, no case cited demonstrates any requirement of use of combined reporting by the commissioner. Alternative methods were used only where the normal information under the three-factor apportionment formerly used by Minnesota was insufficient to apply that formula. That is certainly not the case here.

This court previously addressed an issue similar to that of combined reporting when it had to determine whether to tax the Minnesota outlets of particular foreign corporations separately or as parts of the larger company. Where the Minnesota business operation is dependent upon or contributory to the operation of businesses without the state, the entire company is usually viewed as a unitary operation and the sum of its revenues and profits are considered for Minnesota income tax purposes. *See Commissioner of Revenue v. Associated Dry Goods, Inc.,* 347 N.W.2d 36, 38 (Minn.1984).

In this case, it has been stipulated that Westinghouse and Thermo King are parts of a unitary business. However, unlike the

taxpayers in *Associated Dry Goods* or similar cases, Westinghouse and Thermo King are distinct corporations. Relators argue that the commissioner should have disregarded the formalities of incorporation and treated Thermo King and Westinghouse in the same manner it has ordinarily treated other unitary businesses.

■ In Minnesota, as previously noted, there have been no statutes generally allowing combined reports for the years 1940 through 1982. Assessing relators on a unitary basis may better reflect the reality of the unified nature of relators' businesses. However, given the lack of statutory underpinning or case law precedent for combined reporting, the commissioner should not be faulted for having chosen not to assess relators' taxes on that basis.

What is clear is that, from 1941 until 1982, Minnesota used the three-factor apportionment formula in applying our tax laws; that the commissioner was following the express intent of the legislature; that the Minnesota formula was a reasonable one and was uniformly applied to all taxpayers; and that the delegation of such authority to the commissioner by the legislature was not improper nor did it constitute a lack of due process.

Finally, relators' argument under the U.S. Constitution seems foreclosed by *Container Corp. of America v. Franchise Tax Board*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983), a case involving California's attempt to include in a California corporation's taxable income money earned from separately incorporated subsidiaries located overseas.

First, in discussing California's use of unitary business concepts, the Court noted that states are not constitutionally required to treat as unitary all corporations that function in a unitary manner. "[A] State might decide to respect formal corporate lines and treat the ownership of a corporate subsidiary as *per se* a passive investment." *Id.*, 463 U.S. at 167–68, 103 S.Ct. at 2941.

■ This would seem to dispose of any claim that the commissioner's decision to respect relators' separate corporate existence is itself unconstitutional. However, relators also argue that the commissioner's use of Minnesota's three-factor apportionment against relators does not reflect their business activities within Minnesota and, thus, offends constitutional due process.

■ *Container Corp.* contains the authoritative test for the constitutionality of apportionment formulae:

Such an apportionment formula must, under both the Due Process and Commerce Clauses, be fair. The first * * * component of fairness in an apportionment formula is what might be called internal consistency—that is, the formula must be such that, if applied by every jurisdiction, it would result in no more than all of the unitary business' income being taxed. The second and more difficult requirement is what might be called external consistency—the factor or factors used in the apportionment formula must actually reflect a reasonable sense of how income is generated.

*Id.*, 463 U.S. at 169, 103 S.Ct. at 2942 (citations omitted). The United States Supreme Court has specifically found that the type of three-factor apportionment formula used by Minnesota, which measures the proportion of a company's sales, property and payroll located in the state, fairly reflects the generation of income. "[N]ot only has the three-factor formula met our approval, but it has become * * * something of a benchmark against which other apportionment formulas are judged." *Id.*, 463 U.S. at 170, 103 S.Ct. at 2943.

Thus, relators' remaining argument is that the commissioner's method of taxation is internally inconsistent, *i.e.* that the application of Minnesota's three-factor formula to the relators on an individual basis results in multiple taxation of the same business income by different states.

Relators support this claim by noting that, at least in Minnesota, their taxes are higher when assessed on a unitary basis than when assessed separately. From this

fact, relators apparently infer that if other states taxed the Westinghouse group of companies on a unitary basis while Minnesota taxed individually, then relators would pay more than 100% of their fair share of taxes. However, this argument seems to overlook the other possible inference that states adopting combined reporting are taxing at less than the constitutionally acceptable rate. Certainly, relators have not demonstrated in any clear fashion a real danger of overlap.

Relators' original claim that the commissions paid to WEEX can be deducted as business expenses, although still made, is not effective in light of this court's decision in *Bunge*.

Any attempt by relators to salvage the funds paid in protest on the DISC commission claim requires relators to establish some independent legal basis for finding that that claim still survives the *Bunge* holding. There being no apparent basis for the DISC commission claim, it too must fall.

The tax court is affirmed.