419 So.2d 1288 (1982)
BUNGE CORPORATION
v.
SECRETARY OF the DEPARTMENT OF REVENUE AND TAXATION.
No. 5-62.
Court of Appeal of Louisiana, Fifth Circuit.
August 30, 1982.
Rehearing Denied October 18, 1982.
*1289 George F. Riess, Monroe & Lemann, New Orleans, for plaintiff-appellant.
Howard M. Romaine, Dept. of Revenue and Taxation, Baton Rouge, for defendant-appellee.
Before CHEHARDY, KLIEBERT and CURRAULT, JJ.
CURRAULT, Judge.
This appeal arises from a judgment of the Twenty-ninth Judicial District Court affirming the Board of Tax Appeals' decision upholding an assessment by the defendant, Department of Revenue and Taxation, against plaintiff, Bunge Corporation.
The Bunge Corporation filed a corporate income tax return with the State of Louisiana for the fiscal year ending March 31, 1975. The return indicated that the Bunge Corporation had a total net income from all sources in the amount of Thirty-four Million, Seventy-seven Thousand, Two Hundred Nineteen and No/100 Dollars ($34,077,219.00). Following an audit of the records of the Bunge Corporation, the Department of Revenue and Taxation determined that Bunge had failed to include in its income monies received by its subsidiary corporation, Bunge Export Corporation (Bunge Export). Bunge Corporation followed the accounting procedure prescribed by the Federal Internal Revenue Code, Section 991 et seq., establishing, for the purpose of federal taxation, a new type of corporation known as a "domestic international sales corporation," commonly referred to as "DISC." This new type of corporation is purely a creature of federal law established simply for decreasing and deferring the Federal Income Tax on income earned through sales of products in foreign markets.
The DISC Statute allows domestic corporations to defer federal income tax on a certain percentage of profits earned in exporting by allowing these corporations to form subsidiary DISC corporations and assigning up to 50 percent of their export business profits to their DISC. These payments to the subsidiary DISC are called "commissions." The DISC Statute further requires that the subsidiary return half of the "commissions" each taxable year to the parent company as "dividends," whether or not actually distributed. The remaining commissions not returned to the parent as dividends are the DISC's "accumulated income." The federal scheme is such that the "accumulated income" in the DISC subsidiary is deferred from federal income taxation until such time as it may be distributed back to the parent corporation.
As Louisiana has no comparable provisions reducing the income tax on corporations engaged primarily in the export of goods, it adjusted the income and expense of Bunge Corporation, disallowing to Bunge the "commission expense" paid to its subsidiary DISC corporation, Bunge Export, which adjustment increased the Bunge Corporation's income upward by Twenty-five Million, Eight Hundred Ninety Thousand, Twenty-one and No/100 Dollars ($25,890,021.00). This upward adjustment generated *1290 an additional income tax due in the amount of Two Hundred Fifty Thousand, Eight Hundred Forty-one and No/100 Dollars ($250,841.00). The Department of Revenue and Taxation made the adjustment under the provisions of LSA-R.S. 47:95 upon the determination that allocation was necessary in order to clearly reflect the income of the business.
On June 20, 1979, the Department, through its Reviewing Auditor, L. Kent LaPlace, assessed the tax in the amount of Two Hundred Fifty Thousand, Eight Hundred Forty-one and No/100 Dollars ($250,841.00) against the Bunge Corporation. Also assessed was interest from the tax to date. From that assessment, Bunge Corporation appealed to the Board of Tax Appeals. The Board of Tax Appeals ordered judgment in favor of the Secretary of the Department of Revenue and Taxation and against Bunge Corporation assessing an income tax against Bunge for the fiscal year ending March 31, 1975, in the amount of Two Hundred Fifty Thousand, Eight Hundred Forty-one Dollars ($250,841.00) plus interest until paid.
Bunge appealed this decision to the Twenty-ninth Judicial District Court, for the Parish of St. Charles, Honorable Thomas J. Malik, Judge, and judgment was rendered and reasons therefor filed May 11, 1981, upholding the judgment of the Board of Tax Appeals. Bunge now appeals the decision of the trial court.
In appealing defendant-appellant has assigned several specifications of error:
(1) That the trial court erred in holding Bunge Corporation formed Bunge Export Corporation solely for the purpose of channelling certain gross income to another corporation so as to exempt it from state income taxes;
(2) That the trial court erred in holding Bunge Export Corporation does not qualify under the definition of a domestic international sales corporation as defined in the Federal Internal Revenue Code;
(3) That the trial court erred in holding Bunge Export Corporation has no assets, no employees, no offices and had a total expense during the year in question of $15.00;
(4) That the trial court erred in holding it was not the intent of the United States Congress to allow a corporation with the characteristics of Bunge Export Corporation to qualify as a domestic international sales corporation;
(5) That the Department of Revenue and Taxation exceeded its authority under LSA-R.S. 47:95 in reallocating income from Bunge Export to Bunge Corporation and in disregarding certain dividends from Bunge Export to Bunge Corporation; and
(6) That the addition of Bunge Export's accumulated DISC income to that of Bunge Corporation under LSA-R.S. 47:95 places an impermissible burden on interstate and foreign commerce thus invalid under Article I, Section 8, Clause 3, the Commerce Clause, of the Constitution of the United States and such an action is a violation of Article VI, the Supremacy Clause, of the Constitution of the United States.

Errors Nos. 1-4
The decision in the Court below that Bunge Export did not qualify under the definition of a domestic international sales corporation was based on four findings. Those findings were characterized in the Court's written reasons as findings of fact and constitute appellant's specification of Errors 1 through 4.
In the proceedings below, neither the petition of Bunge nor the answer of the Department formulates the status of Bunge Export as a DISC as an issue. The record further indicates that the Department never contested the status of Bunge Export as a DISC for federal internal revenue purposes. Indeed on appeal both Bunge and the Department stipulated that the holding of the trial court as to these factual findings was erroneous.
When the factual findings of a trial court have been alleged as erroneous, the proper standard of review is whether or not the factual findings are "clearly wrong." In Arceneaux v. Domingue, 365 So.2d 1330 *1291 (La.1978), the Supreme Court clearly stated that there must be
... a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous). Id. at 1333.
After applying the Arceneaux standard of review of facts on appeal, we conclude that the factual findings comprising appellant's Errors 1 through 4 are clearly wrong (Manifestly erroneous). Accordingly, the judgment of the trial court is amended to be consistent with the factual findings of this court.

Error No. 5
The Secretary of the Department of Revenue and Taxation acted under the authority of Louisiana Revised Statute 47:95[1] which in essence permits the Department to apportion or allocate gross income if it is determined that such apportionment or allocation is necessary in order to prevent evasion of taxes or clearly reflect the income of any such organizations (corporations). Bunge argues the Secretary exceeded the authority of LSA-R.S. 47:95 when she employed that statute to reallocate Bunge Export's "accumulated income" to Bunge to clearly reflect Bunge's income. LSA-R.S. 47:95 was patterned on federal law and has a parallel construction almost verbatim to 26 U.S.C.A. § 482[2].
The purpose of 26 U.S.C.A. § 482, as is the purpose of R.S. 47:95, is to place a controlled taxpayer on tax parity with an uncontrolled taxpayer, thereby determining the true taxable income from the property and business of a controlled taxpayer. Treasury Regulation § 1.482-1(b)(1); Northwestern National Bank of Minneapolis v. United States, 556 F.2d 889, 891 (CA 8 1977).
Special treatment, however, is given to 26 U.S.C.A. § 482 by the Federal DISC Statute[3]. As previously discussed, this special treatment provides tax deferral on the "accumulated income" of qualified DISC corporations. The Bunge Corporation, in computing its income for federal income tax purposes, made use of the special tax provisions of the DISC Statute. Accordingly, the Internal Revenue Service found no distortion of Bunge's income. Bunge also made use of the Federal DISC Statute in computing its income for State income tax purposes.
The Louisiana income tax law, however, contains no provisions giving special tax treatment to a DISC similar to the special tax treatment provided by the Federal DISC Statute. Bunge, in its argument, would have Louisiana recognizing, for purposes of its income tax, the special tax *1292 treatment of the Federal DISC Statute, even if the Louisiana Legislature has not passed similar legislation.
The argument that Louisiana should automatically recognize the deferral provided by the federal statute is completely without justification. Louisiana does not recognize many federal deductions or shelters and we know of no authority nor has appellant guided this court to any authority which makes it incumbent upon this state to adopt all federally recognized deductions or shelters. This court will not infer into law any taxation deferral scheme where the Louisiana Legislature has not acted.
We cannot find it acceptable to allow Bunge to take advantage of special tax treatment in computing its income for State income tax purposes when such special treatment does not exist in State law. The Secretary of the Department of Revenue and Taxation was secure within the parameters of LSA-R.S. 47:95 when she reallocated the "accumulated income" of Bunge Export. We cannot find any violation of the statutory authority in any actions taken by the Secretary. Bunge must accordingly use proscribed methods and procedures as found in State law to compute its income for State income tax purposes.

Error No. 6
Appellant, Bunge Corporation, has challenged the constitutionality of LSA-R.S. 47:95 arguing that the Louisiana Statute places an impermissible burden on interstate and foreign commerce thus invalid under Article I, Section 8, Clause 3, the Commerce Clause of the United States Constitution and Article VI of the United States Constitution.
Under the 1921 Constitution, the Louisiana Supreme Court enjoyed direct appellate jurisdiction of all cases in which the constitutionality or legality of a tax was contested no matter the holding of the trial court. [La.Const., Art. VII, Section 10(1) and (2) (1921)].[4]
This exclusive appellate jurisdiction was changed by omission, however, and the 1974 Constitution allowed direct appeal to the Supreme Court only if the challenged law or ordinance had been declared unconstitutional by the trial court. [La.Const., Art. V, Section 5(D)(2) (1974)].[5] See Southland Corporation v. Collector of Revenue for Louisiana, 318 So.2d 23 (1975); Duplantis v. Terrebonne Parish School Board, 338 So.2d 722 (La.App. 1st Cir. 1976).
Although the constitutionality of LSA-R.S. 47:95 had been challenged by appellant Bunge Corporation, nevertheless, neither the Board of Tax Appeals nor the trial court ruled on the Statute's constitutionality. We deem such silence to be an affirmation of the challenged statute's constitutionality, thereby invoking the appellate jurisdiction of this court.
We shall address first the issue wherein LSA-R.S. 47:95 is alleged to violate Article VI, the Supremacy Clause, of the United States Constitution. Appellant, Bunge, argues that LSA-R.S. 47:95, by allowing the Department of Revenue to reach into Bunge Export and reallocate the "accumulated income" to Bunge, violates Congressional policy that such income be exempt from taxation. Supporting this argument, Bunge further contends that the legislative history of the Revenue Act of 1971 clearly provides such tax-exempt policy. Appellant, however, does not have a correct interpretation *1293 of either the federal statute or its legislative history.
Consideration under the Supremacy Clause begins with the basic assumption that Congress did not intend to displace state law. Maryland v. Louisiana, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). In Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947), the Supreme Court stated:
Such a purpose [to displace state law] may be evidenced in several ways. The scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for States to supplement it. Pennsylvania R. Co. v. Public Service Comm'n., 250 U.S. 566, 569 [40 S.Ct. 36, 37, 64 L.Ed. 1142]; Cloverleaf Butter Co. v. Patterson, 315 U.S. 148 [62 S.Ct. 491, 86 L.Ed. 754]. Or the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. Hines v. Davidowitz, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581. Likewise, the object sought to be obtained by the federal law and the character of obligations imposed by it may reveal the same purpose. Southern R. Co. v. Railroad Commission, 236 U.S. 439 [35 S.Ct. 304, 59 L.Ed. 661]; Charleston & W.C.R. Co. v. Varnville Co., 237 U.S. 597 [35 S.Ct. 715, 59 L.Ed. 1137]; New York Central R. Co. v. Winfield, 244 U.S. 147] 37 S.Ct. 546, 61 L.Ed. 1045]; Napier v. Atlantic Coast Line R. Co. [272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432] supra. Or the state policy may produce a result inconsistent with the objective of the federal statute. Hill v. Florida, 325 U.S. 538 [65 S.Ct. 1373, 89 L.Ed. 1782]." 331 U.S., at 230, 67 S.Ct., at 1152.
The Court in Maryland v. Louisiana, supra, 451 U.S. at 747, 101 S.Ct. at 2129, added:
Of course, a state statute is void to the extent it conflicts with a federal statute if, for example, "compliance with both federal and state regulations is a physical impossibility," Florida Lime and Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-143, 83 S.Ct. 1210, 1217-18, 10 L.Ed.2d 248 (1963), or where the law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Hines v. Davidowitz, supra, 312 U.S., at 67, 61 S.Ct., at 404. See generally Ray v. Atlantic Richfield Co., 435 U.S. 151, 157-158, 98 S.Ct. 988, 944-45, 55 L.Ed.2d 179 (1978); City of Burbank v. Lockheed Air Terminal, Inc., 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed. 547 (1973).
Equipped with the Supreme Court's articulated guidelines, this court examined in detail both the legislative act and its history. We cannot hold that LSA-R.S. 47:95 violated either the Supremacy Clause or any of the established parameters by which such clause is governed.
In Westinghouse Electric Corporation v. Tully, 449 N.Y.S.2d 677, 681, 434 N.E.2d 1044, 55 N.Y.2d 364 (1982), a case nearly identical to the one presently before this Court[6], the following legislative history was revealed:
On September 8, 1971, shortly before the DISC legislation was enacted, John S. Nolan, Deputy Assistant Secretary of the Treasury for Tax Policy, spokesman for the sponsoring department, in the company of then Secretary of Treasury John B. Connally, officially appeared at a hearing before the Committee on Ways and Means of the House of Representatives. There, Mr. Nolan, in response to an expression of committee concern that the proposal might "prohibit States from levying corporate income taxes on a DISC", was unequivocal in his declaration *1294 that the proposed bill would leave the States "free to impose the tax, if they choose to do so" (see Hearings before House Committee on Ways and Means on the Tax Proposals Contained in the President's New Economic Policy, 92nd Cong., 1st Sess., Part I, pp. 170-171). Moreover, not without significance, proposed legislation which might have preempted the States from taxing DISC was considered by the same committee in 1980, only to be permitted to die without any action (see HR 5076, 96th Cong., 2nd Sess.; Hearing before Committee on Ways and Means on State Taxation of Foreign Source Income, pp. 29 326).
Although graced with ample opportunity to prohibit the taxation of DISCs by state, Congress failed to do so. Indeed, in Senate Report N. 92-437, 92nd Cong., 1st Sess., rptd [1971] U.S.Code & Ad.News 1918, submitted by the Senate Finance Committee, the Committee states:
To provide tax incentives for U.S. firms to increase their exports, the committee has provided tax deferral for one-half of export-related profits .... The version of the DISC provision agreed to by the committee has the same objective as that incorporated in the House version of this bill. Both provisions seek to provide substantial stimulus to exports .... Id. at 1928.
The plain language of Congress indicates their purpose was to remove disadvantages and stimulate exports by providing tax incentives in the form of tax deferrals, not a pervasive scheme of federal regulations so dominant as to preclude any state from taking action. Congress may, in the future, see fit to enact legislation preempting states from taxing DISCs. However, absent some explicit directive from Congress, we will not infer one.
The second prong of Bunge's constitutional attack on LSA-R.S. 47:95 is that the addition of Bunge Export's "accumulated DISC income" to that of Bunge under LSA-R.S. 47:95 places an impermissible burden on interstate and foreign commerce, thus invalid under Article 1, § 8, Cl. 3, of the Constitution of the United States. We believe this constitutional objection has no merit.
Well settled is the rule that a state tax is not per se invalid because it burdens interstate commerce since interstate commerce may constitutionally be made to pay its way. Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). However, a state's right to tax interstate is limited and no state tax may be sustained unless the tax:
(1) has a substantial nexus with the state;
(2) is fairly apportioned;
(3) does not discriminate against interstate commerce; and
(4) is fairly related to the services provided by the state. Maryland v. Louisiana, supra; Mobil Oil Corp. v. Com'r. of Taxes of Vermont, 445 U.S. 425, 443, 100 S.Ct. 1223, 1234, 63 L.Ed.2d 510 (1980).
Appellant, Bunge, however, has chosen to argue, incorrectly we believe, that LSA-R.S. 47:95 is unconstitutional because it is in opposition to Congressional policy. We are of the opinion that Bunge should have constructed their argument in such a fashion as to argue the constitutionality of LSA-R.S. 47:95 under the guidelines proscribed by the Supreme Court. In any event, we have already discarded the alleged existence of any Congressional policy upon which appellant bases his argument. Accordingly, we must find appellant's argument to be without merit.
We believe the constitutional attack on LSA-R.S. 47:95 to be wholly a misapplication of the law. The income tax imposed herein is based upon the taxpayer's relationship to the wholly-owned subsidiary and is completely unrelated to the subsidiary's function of overseas sales or any such foreign commerce. Appellant has been levied *1295 with a tax for the enjoyed privilege of earning income in Louisiana. The measure of this tax falls squarely within the proscribed guidelines set forth by the Supreme Court.
In conclusion, we hold that the Secretary of the Department of Revenue and Taxation was well within the statutory authority of LSA-R.S. 47:95 when she reallocated the "accumulated DISC income." Further, we hold that the constitutional attacks upon LSA-R.S. 47:95 are without merit. Accordingly, the decision of the trial court is amended in part and affirmed in part.
AMENDED AND AFFIRMED.
NOTES
[1] R.S. 47:95(A). "If in any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the State of Louisiana, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the collector is authorized to distribute, apportion or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades or businesses....

(C) For the purpose of this Section, whenever a corporation, which is required to file an income tax return, is affiliated with or related to any other corporation through stock ownership by the same interests or as parent or subsidiary corporations, or whose income is regulated through contract or other arrangement, the collector may require such consolidated statements as in his opinion are necessary in order to determine the taxable income received by any one of the affiliated or related corporations."
[2] 26 U.S.C.A. Section 482. "In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses."
[3] 26 U.S.C.A. §§ 991-997, Pub.L.92-178, Title V, December 10, 1971, 85 Stat. 535.
[4] La.Const. Art. VII, Section 10 (1921) pertinently provides:

"The following cases only shall be appealable to the Supreme Court"
(1) Cases in which the constitutionality or legality of any tax, local improvement assessment, toll or impose levied by the state, or by any parish, municipality, board or subdivision of the state is contested;
(2) Cases in which an ordinance of a parish, municipal corporation, board or subdivision of the state, or a law of this state has been declared unconstitutional; ..."
[5] La.Const. Art. V, Section 5(D) (1974) provides, in part: "In addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional;...."
[6] In Westinghouse, supra, the Appellant Court for the state of New York held constitutional a New York statute which taxes income emanating from the earnings of a DISC. See also, Department of Revenue, Commonwealth of Kentucky v. The Early & Daniel Company, Inc., 628 S.W.2d 630 (KY 1982); Bunge Corp. and Bunge Export Corp. v. Commissioner of Revenue, C.C.H. Minnesota Tax Reports, 200.988 (1980); Cook Export Corp. v. King, 617 S.W.2d 879 (Tenn.1981).