CRAIN, Judge.
Tube-Alloy Corporation (Tube-Alloy) is a domestic corporation which manufactures and sells down-hole tubular products used in the petroleum industry. Its subsidiary, Tube-Alloy Corporation International (International), incorporated under the laws of the State of Texas, purchases products manufactured by Tube-Alloy and sells them on the international market. Tube-Alloy also sells to unrelated purchasers products manufactured for and used in the domestic market. For the fiscal years ending March 31, 1981, 1982 and 1983, the Department of Revenue and Taxation of the State of Louisiana (Department) allocated 100% of International’s income to Tube-Alloy pursuant to La.R.S. 47:95 and assessed Tube-Alloy for the alleged deficiency. Tube-Alloy protested the assessment.
After trial on the merits, judgment was rendered in favor of Tube-Alloy. From this judgment the Department appeals *932 alleging as error: (1) the trial court’s failure to hold that an allocation by the Department pursuant to La.R.S. 47:95 is presumed correct and that the Taxpayer has the burden of proving otherwise; (2) the trial court's determination that Tube-Alloy dealt at arm’s length with International; and (3) the trial court’s failure to apply the ruling of Bunge Corp. v. Secretary of the Department of Revenue and Taxation, 419 So.2d 1288 (La.App. 5th Cir.), writ denied, 423 So.2d 1181 (La.1982).
ASSIGNMENTS OF ERROR NUMBERS 2 and 3
The Department contends that Tube-Alloy failed to carry its burden of proving that it dealt at arm’s length with International.
Congress enacted 26 U.S.C. §§ 991-997 in order to encourage and promote the foreign exportation of manufactured goods by United States corporations by giving favorable tax treatment to the qualifying “Domestic International Sales Corporations” (DISC). Bunge Corp. v. Secretary of Department of Revenue and Taxation, 419 So.2d at 1294. The DISC law was in effect during the fiscal years at issue and International elected DISC status during that period.
Louisiana does not have a similar DISC statute nor does it recognize the federal DISC tax deferral. It need not give similar favorable tax treatment to a corporation which has availed itself of the federal DISC statute. Under some circumstances La. 47:95 may be used to allocate incomes of the DISC to the parent corporation. See Bunge Corp. v. Secretary of Department of Revenue and Taxation, 419 So.2d at 1289.
La.R.S. 47:95(A) provides:
If in any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the State of Louisiana, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the collector is authorized to distribute, apportion or allocate gross income or deductions between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades or businesses.
Article 95.1(C) of the Department’s regulations provides:
Transactions between one controlled taxpayer and another will be subjected to special scrutiny to ascertain whether the common control is being used to reduce, avoid, or escape taxes_ The authority to determine true net income extends to any case in which either by inadvertence or design the taxable net income, in whole or in part, of a controlled taxpayer, is other than it would have been had the taxpayer in the conduct of his affairs been an uncontrolled taxpayer dealing at arm’s length with another uncontrolled taxpayer.
Thus, arm’s length dealing between the parties is the relevant standard for the application of La.R.S. 47:95. Much of the Departments’s case at trial relied on the fact that International was a DISC during the fiscal years at issue and that it was not a viable corporation because International did not have its own employees and its own office. During the auditing process, the Department did not investigate the pricing of the goods sold by Tube-Alloy to International or to third parties.
Mr. William C. Potter, accepted by the court as an expert CPA, testified on behalf of the Department. On cross-examination he stated that the fact that a corporation makes a DISC federal tax election and shares employees and office space with its parent or affiliated corporation and whether the corporation is a viable entity should not be determinative of whether La.R.S. 47:95 is to be applied.
Mr. Nathan Gerald Beard, a co-founder of Tube-Alloy, testified that employees’ salaries, rent, telex, telephone, payroll taxes, medical insurance, bonuses, vacations and fringe benefits were allocated by Tube-Alloy to Internationa] on the basis of a percentage of the time spent on efforts *933 on behalf of International. These expenses were allocated at the end of the fiscal year. The sums were determined upon Mr. Beard’s personal observation and after discussions with Tube-Alloy’s managers and accountants. Mr. Beard stated that the pricing policies of Tube-Alloy were identical for sales to unrelated third party customers as they were for sales to International. Mr. Beard testified that Tube-Alloy sold its products at approximately a 38% profit margin to all customers and at a 34.6% profit margin to International. He stated that the domestic market differs from the international market. Domestic orders must generally be filled immediately thus requiring a large inventory of finished goods (approximately % of Tube-Alloy’s inventory). Domestic orders or sales are also of smaller volume than international orders. Products manufactured for the international market are sized larger than for the domestic market. The orders are greater in volume and give a longer lead time for delivery.
Mr. Barry Melancon, a CPA, was accepted by the court as an expert in accounting and tax matters. Melancon was formerly employed by the accounting firm of Ber-geron and Company and was Tube-Alloy’s and International’s CPA. He later resigned his position with Bergeron and Company in order to serve as Executive Director of the Society of Louisiana CPA’s, which position he held at the time of trial. He testified that it is a common practice between a parent corporation and its affiliates to have the cost of its employees captured at the parent level and allocated to the affiliate. This is done for efficiency reasons. International kept a general ledger, sales journal, general journal, separate bank account, cash investment account, purchases journal and inventory records. He testified that Tube-Alloy’s gross profits on all sales including those to International was approximately 39%. In his opinion the pricing and gross profit on the transactions between Tube-Alloy and International indicated arms length transactions between them.
In Mr. Potter’s opinion, gross profit is not determinative of an arm’s length transaction. He stated that it is, however, a factor to be considered.
In written reasons for judgment, the trial court specifically found that Tube-Alloy dealt at arm’s length with International. Factual determinations of the trial court should not be set aside unless clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After careful review of the record, we find no manifest error therein.
In the third assignment of error the Department contends that Bunge requires the allocation of the income of the DISC to the parent. We find that Bunge allows the Department to apply La.R.S. 47:95 to allocate the income of the DISC to the parent under circumstances where the parent corporation and its DISC subsidiary are not dealing at arms length with each other.
ASSIGNMENT OF ERROR NUMBER 1
In this assignment of error the Department contends that the Department’s reallocation of income is presumed correct and the taxpayer bears the burden of proving otherwise. It alleges that the trial court erred in holding that the Department did not establish a prima facie case of Tube-Alloy’s breach of the only standard relevant to imposition of the tax.
The written reasons for judgment reflect that despite the trial court’s reservations concerning whether the Department had established a prima facie case, the trial court specifically found that Tube-Alloy proved that it dealt at arm’s length with International.
Accordingly, the judgment of the trial court is affirmed. Costs in the sum of $2,243.38, are assessed against appellant.
AFFIRMED.